O’Brien, J.
When this case was here on a former appeal, Baird v. Supervisors, 138 N. Y. 95 ; 51 St. Rep. 690, we held that the board of supervisors of the county of Kings were required by the Constitution, when apportioning the assembly districts for the election of members of assembly from that county, to make the division equal as to population, as far as that was reasonably attainable, while making each district of convenient and contiguous territory and keeping the towns undivided. It was not claimed in defense of the apportionment then before us that there had been any attempt to comply with this rule. The legal question then presented to the court was whether the Constitution imposed any such restriction upon the board when dividing the county into assembly districts. The board have since made another division of which the relators complain, but there is no dispute as to the principle that should govern in the performance of that duty, or as to the requirements of the Constitution. The only question that is now before us is whether our former decision has been in fact obeyed, and whether the present apportionment was made in such a way as to present any question of law reviewable b}r this *107 court. In the former decision it was admitted that a large measure o£ discretion was necessarily left with the board in dividing the county into districts for the election of members of assembly. The duty which the board had to perform was to divide the territory within the boundaries of the county into eighteen assembly districts, each of equal population, as near as may be, while forming each of convenient and contiguous territory, and keeping the four towns in the county undivided. When the population of the county, returned by the census, is divided by eighteen, the number of members assigned to the county by the act of the legislature, it is found that if each district was formed so as to include exactly the same number of inhabitants, it would contain 54,877 people. But under the constitutional limitations forbidding the division of towns, and requiring convenience and contiguity of territory in the formation of the districts, absolute equality of population is not possible, and this is admitted by the learned counsel for the relators. The present apportionment, made under the command of the writ issued after the former-judgment of this court, has so divided the county that eleven of the eighteen districts contain each a population ranging between 53,000 and 58,000. Three of the remaining districts contain the. following population respectively: 61,263, 60,808, 60,381. Three others contain 50,393, 49,197, 48,944, and the other district 58,550. The relators, contending that the writ had not been obeyed, applied to this court for an alias writ, and the motion was denied and this order affirmed at general term. The appeal raises the question how far this court can interfere with the action of public bodies in the discharge of ministerial duties involving the exercise of discretion. Upon the former appeal the nature and limits of that power, when applied to the duty of a board of supervisors creating legislative districts under the mandate of the Constitution, were stated in this language : “We do not intend by this decision to hold that every trifling deviation from equality of population would justify or warrant an application to a court for redress. Such, we think, is not the meaning of the provision. It must be a grave, palpable and reasonable deviation from the standard, so that when the facts are presented argument would not be necessary to convince a fair man that very great and wholly unnecessary inequality has been intentionally provided for. This is as near an exact definition of the meaning of this section in this regard as I am able to now give.”
The court is again asked to, interfere on two grounds : (1) That the division has not been made in such a way as to secure equality of population among the districts as near as may be. (2) That at least one of the districts, though made up of contiguous territory, has not been formed with reference to convenience as required by . the Constitution. This is the 16th district composed of two towns and a part of three wards of Brooklyn. The learned counsel for the relators has printed and placed upon his points a map of this district side by side with one of that famous district in Massachusetts credited to Governor Gerry which introduced a word of somewhat odious signification into the language. The district is cer *108 tainly irregular in form though there is nothing to show that it is inconvenient. The comparison is liable to be quite misleading. A shoe-string district cut across the state of Massachusetts eighty years ago, embracing the sparsely peopled regions of that state might well be said to be inconvenient, while a district of irregular form in the densely populated parts of a great city of to-day would not be. The Constitution does not require the districts to be made up of compact territory. When the Constitution of 1846 was framed the idea of convenient territory and the integrity of towns in the formation of legislative divisions referred principally if not wholly to the rural parts of the state where the population was scattered. It did not forbid the division of wards in cities nor was it supposed that any great inconvenience could result from the formation of districts of irregular shape in the great cities as they exist to-day. Indeed, it is quite conceivable that assembly districts in New York and Brooklyn might be so irregular in form as to present an unfavorable appearance when mapped upon paper, but which would in fact be more convenient when laid out with reference to streets, blocks and election districts than if they were compact and regular. The difficulties of intercourse between different sections of a large county, which were present to the minds of the framers of the Constitution in that day have been largely overcome by modern means of communication, and, if they ever existed, they have entirely disappeared in the great cities of the state. The record discloses no ground for judicial interference with the action of the board on account of any actual inconvenience or difficulty arising from the territorial form of any of the districts. The only ground of complaint, if any exists, is the inequality of population. The learned counsel for the relators has attempted to show how this could and should have been avoided and how a division could have been made which would make the population of each district more nearly equal. It is quite possible that he could have made a more equitable division of the population. It is quite likely that the courts could have made a better apportionment than the one now before us. But neither the courts nor the counsel have been intrusted with this power or duty by the Constitution. This division of the county of Kings into assembly districts is the product of many minds and not of one mind. It is what the board finally agreed upon. Each member may have had views of his own with reference to his locality. These conflicting views and local demands, always clamorous in such a body, had to be reconciled. It was the duty of the members to agree upon some plan of division reasonably fair and just, and it was perhaps impossible to formulate one that would be mathematically accurate. In the nature- of things much must be left to the discretion of the board, the members of which come front every ward and town of the county. The remarks of the learned judge who gave the opinion of this court in another case where the action of the legislature in the formation of senate districts was under review,are applicable: “Certain districts may be picked out from the whole number and compared with certain others, and inequality be charged against them. But *109 when all the counties in the state are to be arranged, and brought into connection upon some plan in which the express commands of the Constitution as to contiguous territory and county lines are to be observed, it will pass the wit of man to make such an alteration of the senate districts for this state that may not be the subject of adverse criticism, and of alleged possible improvement.” People ex rel. Carter v. Rice, 135 N. Y. 473; 47 St. Rep. 702.
The board had the same difficulties to meet in the formation- of assembly districts that the legislature had in the formation of senate districts. I do not think that the present apportionment is of such a character as to j ustify the interference of the courts within the principle laid down in the former appeal. It may not be, and probably is not, an ideal one. But it was made by the body having the power and discretion under the Constitution for that purpose. It adopted no erroneous rule or principle of action as it did in making the first apportionment. The objection to the result grows out of the exercise of the discretion which, it must be concéded, the board possesses. The supreme court in the locality has examined its action and refused to interfere. The order of the court below was right unless legislative apportionments are to be made, in the end, by the courts instead of the legislature and the local boards appointed for that purpose. The great and principal function of this court is to review questions of law passed upon by inferior courts or arising from the action of ministerial or governmental bodies, and not to revise official action involving the exercise of discretion. If this apportionment does not, upon the face of the record, indicate such a manifest abuse of discretion as virtually to amount to an evasion or disobedience of our former decision, then the court cannot interfere or set it aside without drawing to itself powers which have been confided by the Constitution to other departments of the government. The power of the court to compel local boards of apportionment to perform the duty imposed -upon them by the Constitution was asserted on the former appeal, and nothing more need now be added to what was then decided. The record now before us does not disclose such an abuse of discretion as to justify judicial interference. There is inequality of population in the districts as formed, but not to such an extent or in such a degree as to warrant us in holding as matter of law that the board has abused its powers or refused to exercise its discretion. It does not seem to me that all the criticism of the learned counsel for the relators upon the action of the board is well founded. The division of a great county containing a million of people or more into assembly districts in such a way that one-half the members of assembly were elected by each of two great political parties at the last election, as was admitted upon the argument, cannot be so essentially and plainly vicious as to justify an appeal to the courts. If the one hundred and twenty-eight members composing the assembly could' be based upon constituencies without any greater inequality in population than exists in the eighteen districts of Kings it would, I think, be regarded as a reasonably fair distribution of power. But, as already observed, the question here is not whether the division is *110 the best that could have been made, but whether the board had jurisdiction and proceeded according to legal rules. If so, the courts cannot require them to undo the work on account of errors, mistakes or inequalities resulting from the exercise of their discretionary powers, and to perform it in some other way, without assuming governmental powers with which they have not been intrusted by the Constitution or the laws. The Constitution forbids the division of towns, but not the division of wards in the formation of assembly districts. The town is a municipal division of the state of very ancient origin. The wards into which cities are divided have no resemblance to it unless it be in the circumstance that they are represented in the board of supervisors. The indivisibility of wards in the creation of assembly districts cannot be implied from the provision against dividing towns. A ward is not a town, though it may be treated as a town for some purposes of municipal government. The framers of the Constitution, in prohibiting the division of town's, had no intention to include the wards of a city within the provision. If they had, they would have said so. Hence, the board did not transcend its powers by dividing wards in the formation of the districts.
The order appealed from should be affirmed.
All concur.
Order affirmed.