In the Matter of the Application of GEORGE SMITH, Appellant, for a Writ of Mandamus against THE BOARD OF SUPERVISORS OF ST. LAWRENCE COUNTY, Respondent.

*Election — apportionment of election districts — equality of representation — constitutional construction — purpose of the new Constitution to minimize discretion in making an apportionment — contiguous territory — counties and towns must not be divided — districts must be made as nearly equal as possible — the convenience of electors is immaterial — extension of the power of the courts over apportionments.*

The fundamental idea of all laws, in relation to the apportionment of election districts in this State, is equality of representation.

Where a clause of a Constitution, which has received a settled and judicial construction, is adopted in the same words by the framers of a new Constitution, it will be presumed that the construction was likewise adopted; but where, in framing a new or amended Constitution, the framers of an article, covering the same subject-matter as that embraced in an article or provision of the former Constitution which has been judicially construed, employ different language, or, while employing the same language, add to it words of qualification, limitation or restriction, then it must be held that the framers intended to avoid the effect of the construction placed upon the article or provision as it existed in the former Constitution.

The Constitution of the State of New York of 1895 shows an evident intention to reduce to a minimum the discretion vested in the Legislature and in boards of supervisors in apportioning Senators and members of Assembly.

The main purpose of the provisions of the Constitution of 1895 relative to apportionment is to divide the people equally among the Senate and Assembly districts, and the only limitation upon the complete fulfillment of that principle is the provision which prohibits the division of counties and towns and blocks.

The Constitution of 1895, in order to stop the abuse of having districts irregular in form, has required that they be " of convenient and contiguous territory, in as compact form as practicable;" and in order to minimize any inequality of representation in the number of inhabitants in each district, and in order to reduce the discretion of those making the apportionment to a minimum, the Constitution has provided that "Towns or blocks which from their location may be included in either of two districts shall be so placed as to make said districts most nearly equal in number of inhabitants." The word "shall" is here used in the sense of "must," and this direction is mandatory.

The action of the board of supervisors of St. Lawrence county in placing the town of Hermon in the second Assembly district of that county and the town of Madrid in the first Assembly district of the county, both towns being susceptible of being placed in either Assembly district, is erroneous in view of the fact that, had the disposition made of these towns been reversed, the number of voters in each Assembly district, after excluding aliens, would have been more nearly equal.

The prime consideration in the matter of apportionment being equality of representation, it is immaterial that the division actually made is the most conveni ent for the purposes of the inhabitants of the towns of Hermon and Madrid.

The Constitution of 1895, in making apportionments subject to review by the Supreme Court at the suit of any citizen, has made a radical change in the extent of the power which courts formerly had over matters of apportionment. Under the old Constitution the court had power merely to direct a body to proceed anew, without any power to indicate what its action should be, but, under the Constitution of 1895, it seems that the court has power either to correct errors in an apportionment, or to send the proceeding back to the body whose proceedings are being reviewed in order that it may correct them.

APPEAL by George Smith from an order of the Supreme Court, made at the Schenectady Special Term and entered in the office of the clerk of the county of St. Lawrence on the 17th day of July, 1895, denying his motion for a mandamus compelling the board of supervisors of St. Lawrence county to reconvene and reapportion said county into Assembly districts.

*Vasco P. Abbott*, for the appellant.

*A. X. Parker* and *John M. Kellogg*, for the respondent.

HERRICK, J. :

By the Constitution which came into force January 1, 1895, two members of Assembly were allotted to the county of St. Lawrence, and it became the duty of the supervisors of said county to divide the county into two Assembly districts.

In June, 18,95, the board proceeded to perform such duty. The first district was made to consist of the towns of Oswegatchie, Waddington, Madrid, Lisbon, De Peyster, De Kalb, Morristown, Macomb, Hammond, Rossie, Gouverneur, Fowler, Edwards, Pitcairn and Fine, with a population of 40,682.

The second district was made to consist of the towns of Canton, Potsdam, Stockholm, Norfolk, Louisville, Massena, Brasher, Lawrence, Parishville, Hopkinton, Colton, Clifton, Clare, Pierrepont, Russell and Hermon, with a population of 39,966.

For the purposes of this discussion perhaps it is well to give the population of each of the towns of the county, excluding aliens. It is as follows :

| | |
|---|---:|
| Waddington | 1,988 |
| Lisbon | 3,487 |
| De Peyster | 903 |
| Morristown | 1,871 |
| Hammond | 1,561 |
| Gouverneur | 5,621 |
| Edwards | 1,325 |
| Fine | 1,276 |
| Potsdam | 8,268 |
| Norfolk | 1,896 |
| Massena | 2,619 |
| Lawrence | 2,118 |
| Hopkinton | 1,890 |
| Clifton | 443 |
| Pierrepont | 1,904 |
| Hermon | 1,466 |
| Madrid | 1,752 |
| Oswegatchie including the city of Ogdensburg | 12,766 |
| De Kalb | 2,721 |
| Macomb | 1,341 |
| Rossie | 1,303 |
| Fowler | 1,641 |
| Pitcairn | 1,126 |
| Canton | 5,737 |
| Stockholm | 3,006 |
| Louisville | 1,559 |
| Brasher | 2,746 |
| Parishville | 2,135 |
| Colton | 1,810 |
| Clare | 320 |
| Russell | 2,049 |

The preceding table is taken from the statement of the division of the county into Assembly districts, and the population of each district as made up and filed by the board of supervisors, in making the division of the county into Assembly districts.

The petitioner applied for an order to compel the board of supervisors to make another and different division of the county, claim-

ing that the division already make is unconstitutional, that the county can be more equally divided, and that that portion of the Constitution which says, "Towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens," has been disregarded, and he claims that there are a variety of divisions that can be made under the Constitution, which will more nearly equalize the population of the two districts than the present one.

To illustrate, the towns of Madrid and Hermon are upon the dividing line between the districts. Madrid is in the first district and Hermon in the second ; Madrid has a population of 1,752 and Hermon of 1,466 ; if Madrid is placed in the second district and Hermon in the first, it will give a population for the first district of 40,396, and for the second of 40,252, a difference of 144. Again, if the first district is made to consist of the towns of Oswegatchie, Morristown, Hammond, Macomb, De Peyster, De Kalb, Canton, Hermon, Gouverneur, Fowler, Edwards, Russell and Rossie, and the second district of the remaining towns in the county, the population of the first district would be 40,305, and of the second district 40,343, making a difference in population of 38.

An examination of the map of St. Lawrence county will show that either of the districts so made up would be of contiguous territory, and as compact as the division made by the board of supervisors, which is now sought to be reviewed.

I have given these two simply as illustrations. With the table of the population above given, and by an inspection of the map of St. Lawrence county, it will be seen that a variety of others can be made, by which contiguity and compactness of territory will be obtained, and a less difference of population between the districts had than under the present division.

In and of itself, the manner in which the case at bar is decided is perhaps of no particular importance, but being one of the first cases under the apportionment article of the new Constitution, it becomes of great importance that it be decided upon correct principles.

The case is a peculiarly happy one for a demonstration of the proper principle to be applied in cases of apportionment under the

new Constitution, because it is absolutely of no political, or perhaps I should say of no party consequence, how St. Lawrence county is divided ; the same political party will largely preponderate in both districts no matter how they are made up.

What are the true rules or principles to govern apportionments, and have they been applied in this case ?

The cases of *The People ex rel. Carter* v. *Rice* (135 N. Y. 473) and *The Matter of Baird* (138 id. 95 ; 142 id. 523) have given such full historical accounts of apportionments in this State that a review of former apportionments, under former Constitutions, would be a useless display of learning upon that subject.

The fundamental idea of all laws in relation to apportionments in this State may be said to be equality of representation ; and I think the correct principle is set forth in the dissenting opinion of Chief Justice ANDREWS in .the case of *The People ex rel. Carter* v. *Rice* (135 N. Y. 513), where he said : " It is the cardinal principle of free representative government that every elector shall have equal weight in exercising the suffrage."

While it is unnecessary here to enter into any exhaustive review of the history of the laws in relation to apportionments in this State, it is perhaps necessary, for the purpose of determining the construction we should give to the present Constitution, that we refer to the Constitution which preceded it, and the construction given to it by the court of last resort.

Section 5 of article 3 of the old Constitution provided that " The members of Assembly shall be apportioned among the several counties of the State, by the Legislature, as nearly as may be, according to the number of their respective inhabitants, excluding aliens." And it further provided that the " board of supervisors in such counties as may be entitled under such apportionment to more than one member, * * * shall assemble at such time as the Legislature making such apportionment shall prescribe, and divide their respective counties into Assembly districts, each of which districts shall consist of convenient and contiguous territory, equal to the number of members of assembly to which such counties shall be entitled, and shall cause to be filed in the offices of the Secretary of State and the clerks of their respective counties a description of such districts, specifying the number of each district and the popu-

lation thereof, according to the last preceding enumeration, as near as can be ascertained.  *  *  *  No town shall be divided in the formation of Assembly districts."

In the case of *Baird* v. *Board of Supervisors* (138 N. Y. 95) the court construed this section, so far as it related to the duty of the board of supervisors, as calling for a division into districts, " as nearly as may be, of an equal number of inhabitants, regard being had to the other provisions of the section."

And under such construction the Court of Appeals held that a discretion was vested in the board of supervisors in making the division, and that before the court would interfere with the exercise of that discretion there must be such an abuse of it " as to clearly show an open and intended violation of the Constitution," and that " it must be a grave, palpable and unreasonable deviation from the standard, so that, when the facts are presented, argument would not be necessary to convince a fair man that very great and wholly unnecessary inequality has been intentionally provided for."  (142 N. Y. 523.)

The last time the *Baird* case was before the court it refused to set aside a division of a county into Assembly districts where the difference between the different districts in a county was upwards of 6,000.  (75 Hun, 545 ; 142 N. Y. 543.)

The various apportionments made under the Constitution of 1846 and its several amendments were the subjects of fierce contentions, and the abuses and inequalities which could be perpetrated and brought about under them, without any power of correction by the courts, are matters of common knowledge.

When the Constitutional Convention, which framed the present Constitution, met, one of the most interesting and important questions brought before it was that of apportionment, and there was an evident desire and intention to change the law in reference to future apportionments.  While the debates of the convention show that the manner in which it apportioned the Senators and Assemblymen was the subject of radical differences of opinion and bitter partisan strife, yet there was an apparent unanimity of opinion as to the principles upon which future apportionments should be made, and as to the principles upon which boards of supervisors should proceed in dividing their counties into Assembly districts.

It has been laid down as a principle of constitutional construction that, where a clause of a Constitution which has received a settled and judicial construction is adopted in the same words by the framers of another Constitution it will be presumed that the construction was likewise adopted.    (Black's Const. Law. 68.)

And I think it may be likewise laid down as a rule that, where in framing a new or amended Constitution the framers of an article relating to the same subject-matter that is embraced in an article or provision of the former Constitution, which has received a judicial construction, employ different language, or, while employing the same language, add to it words of qualification, limitation or restriction, it must be held that they intended to avoid the effects of the construction placed upon the article or provision as it existed in the former Constitution.

The abuses and inequalities which were permissible under the former Constitution grew out of the discretion which the court held was vested in the Legislature and in the boards of supervisors, which was only qualified by the provision that the apportionment should be "as nearly as may be according to the number of their respective inhabitants, excluding aliens;" and that territorially such Assembly districts should "consist of convenient and contiguous territory," and that "no town shall be divided in the formation of Assembly districts."

The new Constitution in all its provisions shows an evident intention to reduce the discretion vested in the Legislature and in the boards of supervisors, in apportioning Senators and members of Assembly, to a minimum.

Section 4 of article 3 provides "that each Senate district shall contain, as nearly as may be, an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, and shall remain unaltered until the return of another enumeration, and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a Senate district, except to make two or more Senate districts wholly in such county. No town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of Senate districts; nor shall any district contain a greater excess in population over an adjoining district in the same county than the population of a town or block therein

adjoining such district. Counties, towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens."

Section 5 of the same article provides that the members of Assembly "shall be apportioned by the Legislature at the first regular session after the return of every enumeration among the several counties of the State, as nearly as may be according to the number of their respective inhabitants." It then provides for the method of apportioning the members of Assembly among the different counties of the State, providing a mathematical process intended to reduce the discretion of the Legislature, if there is any discretion left, to a minimum. It further provides that in counties entitled to more than one member, the board of supervisors shall "divide such counties into Assembly districts as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory, in as compact form as practicable. * * * No town, and no block in a city inclosed by streets or public ways, shall be divided in the formation of Assembly districts, nor shall any district contain a greater excess in population over an adjoining district in the same Senate district than the population of a town or block therein adjoining such Assembly district. Towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants."

It will be observed that the fundamental principle is a division of the Senate and Assembly districts equally among the people. The only limitation upon the complete fulfillment of that principle is the prohibition against the division of counties and towns.

It will be noted that nearly all the provisions of those sections of the present Constitution that differ from the provisions of the old Constitution are for the purpose of compelling equality of representation, and to make the Assembly districts as nearly equal as possible in the number of inhabitants. Under other Constitutions it had been found that the simple requirement to divide into districts, "as nearly equal in number of inhabitants as may be," would permit a gerrymander, so called, by forming districts of irregular and even detached portions of the territory to be divided.

To prevent that, there have been incorporated into the Constitutions of this and other States the words "of contiguous and convenient territory," or other words of like import. Under that provision, districts were formed in which, while the population was nearly equally divided, yet it was grouped in such a way that while the territory was contiguous, and might be said to be convenient, the party in the minority in the locality divided had an equal or greater representation than the majority ; or the localities containing the majorities of one party were grouped in a single district, as is illustrated by the well-known "shoe-string district," so called, of Mississippi, a district extending 300 miles or more along the Mississippi river and extending back a distance of only twenty miles.

The territory of the district was contiguous, and it could be said to be convenient because the river afforded a natural and ready means of access from one part of the district to the other and afforded a convenient means of communication between the inhabitants of the different parts of the district, but at the same time it accomplished the placing together of the great body of those of one political faith in a single district, when, if divided up and thrown into different congressional districts of the State, their numbers being thus distributed, would have produced districts more evenly divided politically between the great political parties. By this means a political party was enabled to gain a representation to which its numbers did not entitle it.

It was found that under the Constitution in existence in this State prior to January 1, 1895, irregular districts could thus be formed, there being no requirement in our Constitution that they should be compact. (*Matter of Baird*, 142 N. Y. 527.)

Those who formed them would allege reasons of convenience of communication, etc., which the courts did not feel that they were at liberty under the then requirements of the Constitution, and the discretion that they held to be vested both in the Legislature and in the boards of supervisors, to review and correct.

To stop that abuse it will be observed that in the present Constitution has been placed the requirement of compactness, so that territorially the districts are required to be "of convenient and contiguous territory in as compact form as practicable."

If the requirements as to apportionment were left at that, there

would still be an opportunity for the exercise of discretion that would produce inequalities of representation when measured by the number of inhabitants in each district, and to reduce that discretion to a minimum the further provisions were brought in that no district should contain a greater excess in population over an adjoining district in the same Senate district than the population of a town or block therein adjoining such Assembly district, and to minimize it still further we have the following clause : " Towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants."

Thus the whole intent, it will be seen, of the changes effected by the provisions of the new Constitution in relation to apportionment, is to force as far as possible an equal division of the people into Assembly districts so as to produce an equality of representation and give to every elector an equal weight in the election of members of the Legislature. That being the intent of these provisions of the Constitution, I think the clause " Towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants," is mandatory, and that the word *shall* is there used in the sense of *must*.

The court below, in denying the application of the petitioner, was governed largely, if not entirely, by the cases heretofore decided in the court of last resort, under former constitutional provisions ; but the changes that have been made by the new Constitution, and the reasons for those changes, render the cases heretofore decided no longer of importance, except as historical discussions of the subject and for the general principles that they lay down, applicable to all systems of apportionment. They are no longer precedents to be followed, but only precedents to be avoided, and illustrations of what ought not to be done under our existing Constitution ; because, as heretofore stated, the changes that were made in the Constitution were made for the very purpose of preventing the doing of that which the courts held could be legally done under the old Constitution.

It is a general rule in the interpretation and enforcement of Constitutions that full force and effect shall be given to each word,

clause and requirement. Sometimes, however, it is impossible to strictly comply with this rule; one word, clause or requirement may be modified by another, or those of minor importance may have to be subordinated to those of greater.

In making apportionments and divisions of counties under a Constitution with so many requirements, it is obvious that it must frequently happen that all the requirements of the Constitution cannot be strictly complied with; that there will be a conflict, or seeming conflict, between them, and that a preference must be given to some over the others; in such cases those of less importance must give way to those of greater; weight must be given to those requirements that are of primary importance.

Of course, there are some requirements in the division of counties that are imperative, and as to which there is no discretion; those are the prohibition against dividing towns or blocks, and the requirement that no district shall contain a greater excess in population over an adjoining district, in the same Senate district, than the population of a town or block therein, adjoining such Assembly district, and that towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants.

These provisions seem to be mandatory, and can, so far as I can see, all be strictly complied with. As to the other requirements, and as to which there may be some discretion, where there is any conflict or difficulty in carrying them all into effect, preference must be given, as I have before stated, to those of primary importance; they cannot stand upon an equality.

These principles have not been followed in making the division now under review. Confessedly, that part of the Constitution requiring towns or blocks which, from their location, may be placed in either district, to be so placed as to make said districts most nearly equal in number of inhabitants, has not been complied with, and it has not been complied with because it is alleged to be more convenient to arrange them without regard to such requirement.

And the argument made before us in behalf of the respondent was almost entirely confined to the question of convenience, and the propriety of the transposition of the towns of Madrid and Hermon from one district to the other, without paying any attention to other

changes that might be made which would produce more nearly an equality of inhabitants between the two districts.

The affidavits read by the respondent set forth that the county of St. Lawrence is the largest in area of any of the counties of the State, and that parts of it are sparsely settled, and that in dividing it into two Assembly districts the supervisors not only considered the number of inhabitants which should be contained in each district, but also the convenience of the territory thus divided. That the town of Hermon, placed in the second district, and which the petitioner insists should have been placed in the first, is within three-quarters of an hour's ride by carriage from Canton, also placed in the second district. That Canton is the county seat of said county, and that in the future political conventions of such second district would naturally be held there. That the citizens of the town of Hermon generally go to Canton for the purpose of transacting their trading, banking and other business; that the town of Hermon has no railroad running through it, and no convenient means of communication with the towns in the first Assembly district, and the inhabitants of said town desired to be in the second district.

That the town of Madrid, which, in said apportionment, was put in the first, and which the petitioner claimed should have been put in the second Assembly district, has a convenient .communication with the city of Ogdensburg and other towns of the first district, and no such means of communication with towns placed in the second Assembly district, and that its supervisor, representing the town, desired that it be placed in the first district. That the apportionment as made was most convenient for the inhabitants residing in said two towns, and was desired by them. That after due and careful consideration of the matter the supervisors reached a conclusion, after taking into account the questions of convenience and the number of inhabitants in each district, that the division as made inflicted the least hardship on the various towns and the inhabitants thereof, and conformed most nearly to the constitutional requirements of any division that could be made.

These reasons for not dividing equally as to population seem to me trivial; there is no pretense of any lack of common interest; there is no pretense that their political rights cannot be exercised as well

in one district as in another; they will all vote at their election district in their respective towns, but it is asserted that the present division is more convenient for attending Assembly district conventions, which it is assumed will in the future be held in the localities stated, and if so held, while certainly convenient for the towns of Hermon and Madrid, are just as certainly inconvenient for the majority of the other towns, because the localities where it is assumed such conventions will be held are in each instance, not in the center, or anywhere near the center, either territorially, or in population, of either of such districts, but in one of the boundary towns. But assuming that this division is the most convenient, convenience is not superior to, nor upon a parity with, equality of representation. That is the prime consideration.

To give convenience of location any preference over population is to invert the true position of those requirements of the Constitution; to use an old expression, it is "to put the cart before the horse." To place it upon the same level, to give it the same importance as those portions of the Constitution requiring an equal division of the inhabitants, is to sacrifice substance to ease, and is to belittle the fundamental principles of free representative government, equality of representation, and "equal weight in exercising the suffrage," and is to divert the requirement as to convenience from the purpose it was intended to subserve, and open the door for an exercise of discretion uncontrollable by the courts, and under which representation by the people may be juggled with, and a majority be given a greater voice than it is entitled to, or a minority be given an equal, and perhaps superior voice to that of the majority. These things cannot be absolutely prevented, but the danger of them may be minimized. An absolutely equal division based upon population is not practicable, when neither counties or towns can be divided, but so far as it can be produced under the law, it should be compelled.

It is true that the difference in population between the two districts is small compared with the differences that have been heretofore permitted in the division of counties into Assembly districts, but by a strict compliance with the Constitution it may be made much smaller.

If the argument of convenience is to prevail in this case, and we

are to continue to hold that it is in the discretion of the supervisors, for the sake of what they declare to be the convenience of the people, to disregard the provision of the Constitution which says, "Towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly equal in number of inhabitants," then there is no reason, for the sake of convenience, why that other provision of the Constitution, that "No town and no block in a city inclosed by streets or public ways shall be divided in the formation of Senate districts," should not be disregarded, nor why the further provision, "Nor shall any district contain a greater excess in population over an adjoining district in the same county than the population of a town or block therein adjoining such district," should not also be disregarded by them. If convenience is to be paramount, or placed upon an equality even with these provisions; if we are to hold that we will not enforce a strict compliance with the requirements of the Constitution, because there is a difference of only 716 between the populations of the two districts, when by a compliance with them the difference may be made much slighter, where are we to stop; how great must the difference be before the courts will act? If in the exercise of their discretion, and upon the ground of convenience, we are to hold that because the supervisors are made under the Constitution the body to divide the county, and are possibly vested with some power in so doing, we will not correct their action, then we revert to the construction placed upon the discretion of boards of supervisors in making such division in *The Matter of Baird* (142 N. Y. 523), where differences between Assembly districts of nearly 6,000 were permitted to stand, because it was held it was not such an abuse of the discretion of the board that the court would reverse its action. To permit this is to render ineffective and nugatory the provisions of the new Constitution in relation to towns and blocks, which I have quoted.

The provisions of section 5 of article 3, that no Assembly district shall "contain a greater excess in population over an adjoining district in the same Senate district than the population of a town or block therein adjoining such Assembly district," and that towns or blocks which, from their location, may be included in either of two districts, shall be so placed as to make said districts most nearly

equal in number of inhabitants," were placed in the Constitution for the express purpose of compelling and enforcing an equal division according to population, and to provide for equality of representation, and, as said before, that was the fundamental idea which caused the changes from the old Constitution ; and to carry that idea into effect, and to enforce the true principle of apportionment, those provisions must be held to be paramount to the one providing for convenient territory, as that has formerly been construed by the courts of the State. It follows from this that the order appealed from should be reversed, and an order be granted directing the board of supervisors to redistrict the county of St. Lawrence pursuant to the principles herein set forth.

It is said that an order of this kind, made by the court, may eventually result in the courts making apportionments instead of the Legislature and boards of supervisors ; that when a court has once made an order compelling a redivision, one apportionment after another may be set aside until one is compelled that meets the views of the court; that possibly may be true, but it will be time enough to cross that bridge when we come to it.

Courts have heretofore been very chary in interfering with apportionments made by the Legislature, or by boards of supervisors, because the power of apportionment was by the Constitution vested in the Legislature and the boards of supervisors, and they were the sole and only authorities to make such apportionments, and were necessarily vested with a discretion, with which the courts would not interfere except in cases of gross and palpable abuse.

Apportionments were also considered, to a large extent, as legislative and political acts, with which the courts, not being expressly authorized so to do by the Constitution, would not interfere, except in case of an abuse so palpable and evident that such legislative body might be said to have exceeded and gone beyond the powers conferred upon it by the Constitution. But the new Constitution has made a radical change in that respect. Section 5 of article 3 provides that : "An apportionment by the Legislature, or other body, shall be subject to review by the Supreme Court, at the suit of any citizen, under such reasonable regulations as the Legislature may prescribe."

However people may differ as to the wisdom of this provision of

the Constitution; however much we may regret that the courts have been made a part of the machinery of the State for the purposes of apportionment, it has been embedded in the Constitution, and the duty is imposed upon them of taking part in such proceedings when called upon to do so, and it is a duty they cannot shirk.

The Legislature has made no regulations under which the power of review may be exercised, but its failure to do so does not deprive the court of the power conferred by the Constitution; the failure of the Legislature to prescribe rules of practice simply leaves the court to exercise the power conferred according to the usage of the court in similar cases when no express rule or statute is provided for its procedure.

The will of the people that such power shall be exercised cannot be nullified by a failure of the Legislature to provide a procedure regulating the manner of its exercise.

No objection is made in this case as to the manner in which it is sought to review the proceedings of the board of supervisors, and the court, having acquired jurisdiction, will act without regard to the mere form of the proceedings.

When a power is conferred for the benefit of the public, the exercise of that power, when properly called upon as the law requires, becomes a duty, and the language by which authority to exercise the power is conferred must be construed not merely as permissive, but as mandatory.

A citizen of St. Lawrence county brings this suit, asking us to act in the premises. That is all that is required by the Constitution to give the court jurisdiction.

It does not seem to me necessary at this time to attempt to define the full extent of the power conferred upon the court by the words "shall be subject to review by the Supreme Court." But it seems to me that it is much more than the power heretofore exercised by mandamus. The power to review an apportionment is surely something more than the power to determine whether the apportioning body has exceeded the power conferred upon it by the Constitution, and to direct such body to proceed anew, which could be done, but was in effect all that could be done, under the old Constitution, by mandamus; a mere order to compel official action without power to indicate what it should be.

The power to review is valueless unless under it is included the power in the reviewing tribunal either to correct the errors it discovers, or to send the proceeding back to the body whose proceedings are being reviewed, that it may correct them.

The court will not, however, except as a last resort, attempt either to define or exercise the full measure of the power conferred upon it by the Constitution. The good sense of those whose duty it is in the first instance to make apportionments will be relied upon to correct the errors pointed out by the court without its giving such specific directions as to how the corrections are to be made.as would in effect be an apportionment by the court.

In this case neither the letter nor spirit of the Constitution has been complied with, and an order should be made vacating and setting aside the apportionment and division of Assembly districts in St. Lawrence county, and directing the board of supervisors to make a new one.

PUTNAM, J., concurred in result; MAYHAM, P. J., not sitting.

Order reversed, and order made reversing apportionment as per opinion.