(51 Misc. Rep. 192.)

## In re TIMMERMAN et al.

(Supreme Court, Special Term, Erie County.   June 6, 1906.)

**1. STATES—LEGISLATIVE DISTRICTS—APPORTIONMENT OF COUNTIES INTO ASSEMBLY DISTRICTS—VALIDITY.**

The board of supervisors of a county apportioned the county into nine assembly districts.  The difference in the population of two contiguous districts in the same senatorial district was over 6,000.  The greater part of the population of the county was embraced within a city divided into blocks, rendering it possible to make the assembly districts of substantially equal population.  *Held*, that the discrepancy between the number of inhabitants in the assembly districts rendered the apportionment invalid, under Const. art. 3, § 5, requiring the supervisors of each county entitled to more than one assemblyman to divide the counties into assembly districts as nearly equal in number of inhabitants as may be.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. States, § 31.]

**2. SAME.**

An assembly district lying wholly within a city divided into blocks was between five and six miles in length, and with a width in many places of less than a quarter of a mile.  It had 30 sides.  Another district followed in a general way the northerly line of the former district, and had 31 sides, the lines of which divided five wards of the city, and the lines ran in a half circle about the northerly portion of the former district.  There would be equal or greater convenience resulting from a more compact district.  *Held*, that the apportionment violated Const. art. 3, § 5, requiring that assembly districts shall be in as compact form as practicable.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. States, § 31.]

**3. MANDAMUS—VALIDITY OF APPORTIONMENT OF ASSEMBLY DISTRICTS—RIGHT TO COMPEL SUPERVISORS TO RECONVENE.**

Mandamus lies to compel the reconvening of the board of supervisors of a county for the purpose of making a constitutional apportionment of the county into assembly districts.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Mandamus, §§ 130, 138.]

**4. STATES—APPORTIONMENT FOR ASSEMBLY DISTRICTS—VALIDITY.**

There can be no valid assembly apportionment unless there is a prior valid senatorial apportionment; the Constitution providing that each assembly district must be wholly embraced within a senatorial district.

In the matter of the application of Clark H. Timmerman for a writ of mandamus to James D. Wilson, as chairman of the board of supervisors of Erie county, and others, to compel defendants to reconvene and apportion the county into assembly districts.   Writ granted.

Hamilton Ward, John T. Ryan, Wallace Thayer, and Albert H. Jackson, for relator.

George H. Kennedy and John Cunneen, for respondents.

MARCUS, J.   This proceeding is instituted to obtain a writ of peremptory mandamus directed to the board of supervisors of Erie county, requiring them to promptly reconvene, and apportion Erie county into nine assembly districts, as required by the Constitution of the state of New York and the statute of said state, as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory, in as compact form as practicable, and, in effect,

to annul the apportionment heretofore made by said board because of its illegality in failing to comply with the constitutional provision. It appears that on May 22, 1906, the board of supervisors adopted a resolution on assuming to apportion the county of Erie into nine assembly districts, containing, respectively, the following number of inhabitants, viz.: First district, 46,730; Second district, 48,977; Third district, 50,483; Fourth district, 49,476; Fifth district, 47,342; Sixth district, 49,310; Seventh district, 45,813; Eighth district, 51,984; Ninth district, 48,462. In view of the fact that the greater part of the population of Erie county is embraced within the city of Buffalo, which is divided into city blocks, and of the general geographical situation of this city and the towns of said county, all of these conditions admitting of substantially equal apportionments of assembly districts as regards population, the wide discrepancy between the number of inhabitants appearing in the attempted apportionment itself affords a serious objection to its constitutional validity, though the consideration of the question before the court need not rest alone on this numerical variance, as other and more serious objections present themselves.

It will be observed that the largest difference exists between the Seventh and Eighth—two contiguous districts in the same senatorial district—the former having a population of 45,813, and the latter 51,984, making a difference of 6,171.

The most serious objection urged against the validity of this apportionment, however, is that it violates that provision of the Constitution which requires the assembly districts to be "in as compact form as practicable." A glance at the maps presented at once conveys the impression of a gross departure from the requirements of this constitutional provision, which is confirmed by a careful examination of the geographical contour of these proposed districts. The first district, as proposed by the board of supervisors, commences on the westerly margin of the city, and runs thence along its westerly bounds in a southeasterly direction one and three-quarter miles, having an average width of one-half a mile. It then takes an abrupt turn to the north for one and one-half miles, with an average width of one-quarter of a mile, and with some further turnings it runs westerly for half a mile, having an average width of a quarter of a mile, and then turns southeasterly for three-quarters of a mile, having a width at some points of but two city blocks. It then turns at right angles, and in a northeasterly direction for three-quarters of a mile, concluding its convolutions at a point one and one-quarter miles east of Main street—six city blocks west of Fillmore avenue. This district, as proposed, has 30 sides or faces, and is between 5 and 6 miles in length, and with a width in many places of less than one-quarter of a mile. The second proposed district is likewise most capricious in outline, angles, and recesses, and follows, in a general way, the northerly line of the First district, and has 31 sides or faces, the lines of which divide five wards of the city, and its lines run in a half circle about the northerly portion of the First district. As both of these large districts lie wholly within the city of Buffalo, there would appear to be no reason why they could not have been made

more compact, or, at least, reasonably compact, which they obviously are not. The remaining districts in the county as apportioned by the board do not appear to be seriously objectionable as regards compactness; but the departure in those respects as regards the first and second assembly districts appears to be excessive and unnecessary, and therefore not justified by the situation which the city, county, and the senatorial districts present, especially as these two districts are wholly within the city of Buffalo, in which there was great facility for a proper and compact adjustment by reason of the city blocks.

It is claimed in justification of this arbitrary apportionment that there were street car facilities within each of these districts, making access to all parts thereof convenient, but it is equally clear that with the comprehensive street car facilities of the city of Buffalo there would be equal or greater convenience and shorter distances resulting from a more compact outlining of the assembly districts, as in that event every part of a given district would be nearer a common center. These principles are recognized by the Court of Appeals in Re Smith v. Board of Supervisors, 148 N. Y. 187, 42 N. E. 592, where a consideration of greater convenience for the inhabitants of a proposed town were considered as justifying its inclusion in one assembly district instead of another, though resulting in a slight inequality of population. They also were evidently dominant in the minds of the framers of the Constitution of 1894, where the requirement of compactness for the first time appears, in addition to those of convenience and equality of population.

Another serious objection to the validity of the attempted apportionment appears in the omission to include the present city of Tonawanda, which is wholly located in Erie county, and wholly within the Fiftieth senatorial district, which was doubtless an oversight, but which has an important bearing in the disposition of the entire question before me. The board of supervisors were doubtless laboring under the impression that the city of Tonawanda remains a part of the town of Tonawanda as it was prior to its incorporation as a city by chapter 357, p. 704, of the Laws of 1905. The only reference to the town of Tonawanda in the resolution of the board creating the assembly district is found in the formation of the Eighth assembly district, which is stated to include "the towns of Grand Island and Tonawanda as now laid out," and certain portions of the city of Buffalo. An examination of the charter of the city of Tonawanda shows that it provides that:

"The town of Tonawanda shall on and after the passage of this act consist of all that portion of said town not included within the boundaries of the city of Tonawanda and the territory embraced within the boundary of the city of Tonawanda as hereinbefore described shall not constitute or be a part of the town of Tonawanda."

Other provisions of the charter show clearly that the Legislature eliminated the city of Tonawanda from the former town of Tonawanda, and made of it a separate town, leaving the remainder of the former town of Tonawanda the present town of Tonawanda. It may be that, if this were the only obstacle to this apportionment, the courts might strain the language of the resolution of the board of

supervisors so as not to invalidate the apportionment, but, in view of the other objections already considered, it is obviously unwise to overlook this serious objection, as it may have the effect of disenfranchising the voters of the entire city of Tonawanda as regards assembly elections, and in this view it would be clearly invalid and unconstitutional.

The conclusion reached by me that the apportionment heretofore made by the board of supervisors is invalid is strengthened by an examination of the provisions of the present Constitution of this state as compared with the earlier Constitutions. The prior Constitution of 1846, as amended in 1874 (article 3, § 5), merely provided on this subject that the assembly districts "shall consist of convenient and contiguous territory." Notwithstanding the omission under this amendment of 1874 of the provision contained in the original Constitution of 1846, requiring, further, that the assembly districts should be substantially equal in population, the Court of Appeals held that it would not allow an arbitrary variance in population between assembly districts of the state. Baird v. Supervisors, 138 N. Y. 95, 33 N. E. 827, 20 L. R. A. 81. Prior to the adoption of the new Constitution of 1894, abuses grew under the elastic provisions of the amendment of 1874, and the necessity for restoring this provision, and adding a further requirement of compactness in assembly districts which had never been provided for by any Constitution, become imperative. This appears from the reapportionment in the Baird Case, which had been ordered by the Court of Appeals when the original apportionment came before that court. The reapportionment also again came back to that court. Although this new apportionment was arbitrary, as regards compactness of territory, it was sanctioned by the Court of Appeals upon the express ground that the Constitution then in force did not require the assembly districts to be made up of compact territory. Matter of Baird, 142 N. Y. 523–527, 37 N. E. 619.

This question received a great deal of attention in the constitutional convention of 1894, with the result that the present Constitution contains explicit and enlarged provisions to prevent future abuses of this kind. It is now provided by the Constitution of 1894, under which we are proceeding (article 3, § 5), that the supervisors of each county entitled to more than one assemblyman shall—

"Divide such counties into assembly districts as nearly equal in number of inhabitants, excluding aliens, as may be, of covenant and contiguous territory in as compact form as practicable."

And said Constitution provides further:

"No town and no block in a city inclosed by streets or public ways shall be divided in the formation of assembly districts, nor shall any district contain a greater excess in population over an adjoining district in the same senate district than the population of a town or block therein adjoining such assembly district. Towns or blocks, which, from their location, may be included in either of two assembly districts shall be so placed as to make said districts most nearly equal in number of inhabitants, excluding aliens."

Under these provisions of the Constitution as it now stands, the Court of Appeals has said:

"We feel assured that the people of the state can never again be subjected to these inequalities of apportionment and representation which gave rise to some of the constitutional provisions so long as the maximum excess in the population of a district is limited by constitutional provision to the population of a town adjoining such assembly district, and the discretion exercised within that narrow limit is subject to the supervision of the courts. Each case must be decided on its peculiar facts, and the courts can be relied upon at all times to enforce the Constitution in its letter and spirit." In re Smith v. Board of Supervisors, 148 N. Y. 187–194, 42 N. E. 592, 594.

It is further extremely significant that in the Constitution of 1894 there appears for the first time an express provision for review by the courts of proposed apportionments, either by the Legislature as regards senatorial districts, or by boards of supervisors or kindred bodies as regards assembly districts, at the suit of any citizen, and giving preference to such cases and proceedings over all others, and requiring courts to convene promptly, if not in session, for the disposition of the same. Article 3, § 5, last paragraph. It is also well settled that the remedy is by mandamus to compel the reconvening of the board of supervisors for the purpose of making a lawful and constitutional apportionment; the courts holding that:

"The good sense of those whose duty it is in the first instance to make apportionments will be relied upon to correct the errors pointed out by the court without its giving such specific directions as to how the corrections are to be made as would, in effect, be an apportionment by the court."

And it has further been held that:

"The court will not, except as a last resort, attempt either to define or exercise the full measure of the power conferred upon it by the Constitution." Matter of Smith, 90 Hun, 568, 36 N. Y. Supp. 40, reversed on other grounds in 148 N. Y. 187, 42 N. E. 592.

A further objection and argument was made on behalf of the board of supervisors and the validity of their apportionment, to the effect that the apportionment of senatorial districts made by the Legislature itself was illegal and unconstitutional by reason of the great difference of population in the several senatorial districts, which violated the Constitution. Should there be force in this contention, it is difficult to perceive how it could aid in sustaining the validity of the assembly apportionment, for it is obvious that there can be no valid assembly apportionment whatsoever unless there was valid prior senatorial apportionment, as the Constitution provides that each assembly district must be wholly embraced within a senatorial district; so that, if there is no pre-existing legal senatorial district, there cannot possibly be any valid assembly district. Should the claim as to the invalidity of the existing senatorial districts be sustained, every assembly district would necessarily fail, for that very reason, irrespective of all other considerations. For the reasons above stated, the prayer of the petition for a writ of peremptory mandamus is granted; the form of the order and writ to be settled by the court on 24 hours' notice.