THE STATE ex rel. ELLIOTT W. MAJOR, Attorney-General, v. JOSEPH M. PATTERSON et al.

(No. 2.)

In Banc, June 21, 1910.

1. **UNAUTHORIZED ACT: Reason Therefor.** Where the county court had no power to make the order it did, no reason it may have assigned therefor is material or pertinent.

2. **REPRESENTATIVE DISTRICTS: Legislative Matter.** The power to apportion Representatives among the counties, and to declare how many each county shall have, is a legislative power, and can be exercised, under the Constitution, only by the General Assembly; and that clause wherein it is said "senatorial and representative districts may be altered, from time to

time, as public convenience may require," does not mention the county or circuit court, but refers wholly to power reserved to the Legislature to enact legislation by which the district arranged at the end of each decennial period may, after the taking of a census, be altered; but the clause is not self-enforcing, and the Legislature has provided no method by which such alteration can be made; and until it acts the county court cannot divide a county into Representative districts oftener than once in ten years, and it cannot do even that until the Legislature has declared how many Representatives the county can have, and the county having once been subdivided into representative districts in pursuance to an apportionment act cannot be redivided by the county court until another apportionment bill has been enacted.

3. ———: **Unexercised Power in 1902.** Where the Legislature in 1892 apportioned six Representatives to Jackson county, and the county court divided the county into six Representative districts, and again in 1901 the Legislature apportioned six Representatives to that county, and required the county court, "immediately upon the taking effect of this act," to divide the county, and it did not do so, but permitted the districts to remain as they were, it had no power in May, 1910, to redistrict the county. If it had any authority at all under the Act of 1901 to redistrict the county, it was a power that should have been exercised promptly under legislative direction.

4. ———: **When Made and How Often: Meaning of Word When.** The word "when," used in section 3 of article 4 of the Constitution, providing that "when any county shall be entitled to more than one Representative, the county court shall cause such county to be divided into districts," etc., and used in section 6 of said article, providing that "when any county shall be entitled to more than one Senator," means "at the time that"; and the power confided to the court by each section is dependent on prior legislative action, and the Legislature cannot, because of other clauses of the Constitution, make an apportionment to a county oftener than once in ten years, and that must be made at the session following the ascertainment of population by the United States census, and the subdivision of the county into districts by the court must be promptly made thereafter, and no other subdivision, in the absence of a special legislative act and a State census, can be made until the next decennial period.

5. ———: ———: **"From Time to Time": Legislative Matter.** The words "from time to time," found in section 9 of article 4 of the Constitution, providing that "senatorial and representative districts may be altered, from time to time, as public con-

venience may require," refer wholly to legislative power, and are a reservation to the General Assembly of power to provide a method by which the subdivision of a county into senatorial or representative districts may be altered after the county has been redistricted by the courts in pursuance to the decennial apportionment act—a power which the General Assembly has never exercised. If the said section 9 is considered as standing alone, and the words are not construed in connection with other sections, then they fail to confer any authority upon the courts, for it does not mention courts. The power conferred is a legislative one, and besides it is not self-enforcing. In any event, it does not give the courts power to alter or change existing senatorial or representative districts until after the Legislature has acted.

## Certiorari.

Record quashed.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for relator.

(1) The county court can subdivide the county only at the time the county becomes entitled to more than one representative, or when the number is thereafter increased or diminished. Constitution, sec. 3, art. 4. This constitutional section does not vest the power in the county court to subdivide it—it vests only the power to subdivide at)a time and under conditions explicitly set forth. The county court does not subdivide the county every ten years. The re-subdivision is authorized only when it is necessary in order to conform the number of legislative districts to the number of Representatives to which the county is entitled under legislative apportionment at the session following the decennial census. The Constitution expressly directs the Legislature, in section 7 of article 4, to redistrict for senators every ten years, and provides for the contingency in the event of the failure upon the part of the Legislature. The presence of this express direction in the Constitution as to senators shows that the omission of a like direction as to

representative districts was the result of deliberate intent and not an oversight. (2) Legislative omissions cannot be supplied by judicial constructions. State ex inf. v. Railroad, 146 Mo. 169; State ex rel. v. Hayes, 50 Mo. 36. Inconvenient or unjust constitutional provisions cannot be redrafted by the courts by construction. Cooley, Constitutional Limitations, p. 108. (3) There is no implied power to ''change and alter district lines,'' deducible from section 3 of article 4. (4) Section 9 of article 4 vests no power of any kind in the county court. The county courts are not the general agents of the counties or of the States. Their powers are limited and defined by law. Sturgeon v. Hampton, 88 Mo. 213; State ex rel. v. Shortridge, 56 Mo. 129. The county courts act as agents of the counties in the manner and extent prescribed by law. When they step beyond, their acts are void. Saline County v. Wilson, 61 Mo. 239; Steines v. Franklin County, 48 Mo. 177. (5) That ''altering and changing the lines of legislative districts is not county business,'' is self-evident. It is clearly a thing which the Legislature has the right to do. State ex rel. v. Higgins, 125 Mo. 368. While it is not strictly a legislative duty, yet it is a legislative power, though it may be delegated. Ibid. (6.) The Legislature possesses all powers not denied it by the State and Federal Constitutions. Ex parte Roberts, 166 Mo. 212; State ex rel. v. Warner, 197 Mo. 656. (7) Section 9, article 4 of the Constitution is not self-enforcing. It merely indicates principles without laying down rules by means of which those principles may be given the force of law. Cooley, Constitutional Limitations, pp. 121, 119; State ex rel. v. Gibson, 195 Mo. 260. (8) All representation is based on the United States census. R. S. 1899, sec. 5245.

*Scarritt, Scarritt & Jones* and *C. C. Madison* for respondents.

The Constitution, article 4, section 3, undoubtedly confers upon the county court the authority and power to establish legislative districts in the county. The Constitution then provides, in section 9 of article 4, that "representative districts may be altered from time to time as public convenience may require." There is no authority conferred by the Constitution on any but the county court to subdivide the county into representative districts. There is no specific authority given in the Constitution to the Legislature to either subdivide, alter or change any of the representative districts in any county. It follows, therefore, that section 9 refers to the county courts, and authorizes them to alter representative districts from time to time as the public convenience may require. There is nothing in the Constitution that militates against this. No legislative act could affect it, inasmuch as it is a constitutional provision, and there has been no attempt on the part of the Legislature, at any time, to interfere with the authority of the county court in districting or redistricting the representative districts in any county. On the other hand, the Legislature recognizes the authority of the county courts to "alter or divide" legislative districts in the county in section 8390 of the Revised Statutes of 1899, wherein it is said, "When any district or county shall be so altered or divided during the term for which a member shall be elected, and the new district or county shall be authorized to elect other members before the expiration of the term of the former member, in that case the election to fill the vacancy shall be held for the district or county as it shall remain after such alteration or division, and not as it was at the last preceding general election." By section 2 of the same article of the Constitution it is re-

quired that the General Assembly shall apportion among the counties the number of representatives to which they shall be entitled, and that this apportionment shall be "ascertained by the last decennial census of the United States." And by section 7 of the same article of the Constitution it is provided that, "Representatives shall be chosen according to the rule of apportionment established in this Constitution until the next decennial census of the United States shall have been taken and the result thereof as to this State shall be ascertained, when the apportionment shall be revised and adjusted on the basis of that census, and every ten years thereafter upon the basis of the United States census." The power to establish senatorial districts, where there is more than one Senator to a county, is conferred upon the circuit court by section 6 of the same article. It is clearly seen, therefore, that the Constitution has lodged in the General Assembly the authority and power to apportion the representatives among the counties of the State based upon the population of the State as shown by the last preceding United States census, and to reapportion the same every ten years. The same Constitution has lodged in the county courts of the several counties the authority and power to subdivide a county into districts and to alter the same from time to time as the public convenience may require. The same Constitution has lodged in the circuit courts the authority and power to subdivide the counties of the State into senatorial districts and to alter the same from time to time as public convenience may require. It has divided this power and authority among the three instrumentalities for the good of the government. Having given the power to the county courts to create representative districts, and having given the power of apportionment to the Legislature, and not giving them any power with reference to the creation of representative districts, it follows from the well known rule of construction, The expression of one

thing is to the exclusion of all others, that the power of alteration given in section 9 refers, and can refer alone, to the instrumentality, namely, the county court, which has the power and authority to create. In construing the Constitution and statutes, reference must be had to the subject-matter, the objects which prompted and induced their enactment, and the mischief they were intended to remedy. Spitzler v. Young, 63 Mo. 42; Neenan v. Smith, 50 Mo. 525; Ross v. Railroad, 111 Mo. 18; Pugh v. Railroad, 118 Mo. 506; Pembrook v. Huston, 180 Mo. 627.

GRAVES, J.—By its order of May 2, 1910, the county court of Jackson county undertook to subdivide said county into new legislative districts. The Attorney-General applied for and was granted a writ of *certiorari,* requiring said court to certify up its records relative to such question, and the same was submitted to this court upon oral argument and briefs, and the order made by said court on May 2, 1910, was quashed, in a *per curiam* judgment handed down at the time. It therefore only remains for us to assign our reasons, by opinion, for such judgment. The members of the county court were divided in their judgment as to the power which they undertook to exercise. One member of said court, Judge E. E. Axline, disclaimed authority for their act, and conceded that the Attorney-General's complaint of want of authority was well taken. Judges Patterson and Harnden, by whose votes the order had been made, by their return acknowledged the making of the order of May 2, 1910, but averred that they had legal authority therefor. The question is, therefore, a clean-cut proposition of law, and should be disrobed of all other phases, if it could be said other phases appear. Upon the record, other phases do not appear, and only from the briefs would one be impressed with the idea of there being a reason back of the order. This reason to a lawyer is immaterial, with the record we have be-

fore us. If there was legal authority for the order, it should stand, being otherwise unimpeached. Our remarks will therefore be addressed to what we think is a clear legal conclusion. That conclusion, as heretofore announced by this court, is that the county court was without power to act at the time it did act. The order of the court is entitled, "In the Matter of Creating New Legislative Districts," and assigns as a reason therefor that the order theretofore made by the county court on May 18, 1892, "no longer subserved the purposes of equal representation as contemplated by the Constitution and Statutes of Missouri." As stated above, the reasons for the act, whether correctly appearing in the order or not, are of but little value, if the act itself is in derogation of law. No kind of a reason will justify an unauthorized act. Nor will such expressed reasons temporize a violation of law. The county court either did or did not have the right to act, so that it is a pure question of power, and not otherwise. To determine the power, our constitutional and statutory provisions must be considered.

I. Section 3 of article 4 of the Constitution reads: "When any county shall be entitled to more than one representative, the county court shall cause such county to be subdivided into districts of compact and contiguous territory, corresponding in number to the representatives to which such county is entitled, and in population as nearly equal as may be, in each of which the qualified voters shall elect one representative, who shall be a resident of such district."

This section fixes the time when the county court shall act. That time is such time as it shall appear by law that the county is entitled "to more than one representative."

By section 7 of article 4 of the Constitution it is provided for an apportionment of representatives once in every ten years, after each decennial census by the

United States. By section 2 of article 4 the ratio of representation is fixed, and it too refers to the same decennial period. So far as applicable it reads: "The ratio of representation shall be ascertained at each apportioning session of the General Assembly, by dividing the whole number of inhabitants of the State, as ascertained by the last decennial census of the United States, by the number two hundred. Each county having one ratio, or less, shall be entitled to one representative; each county having two-and-a-half times said ratio shall be entitled to two representatives; each county having four times said ratio shall be entitled to three representatives; each county having six times such ratio shall be entitled to four representatives, and so on above that number, giving one additional member for every two-and-a-half additional ratios."

Respondents Patterson and Harnden rely upon section 9 of article 4 of the Constitution, which thus reads: "Senatorial and representative districts may be altered, from time to time, as public convenience may require. When any senatorial district shall be composed of two or more counties, they shall be contiguous; such districts to be as compact as may be, and in the formation of the same no county shall be divided."

Under this section it is claimed that the county court can rearrange the legislative districts at any time. Indeed, if full latitude be given to their contention such districts might be remoulded at each session of the county court, a thing unreasonable within itself.

To start with, this section gives, within itself, no power to the county court. The county court is not mentioned and if it was intended to give it power, such fact must be gathered from the context of the article and not from the section itself. Going to the section itself, it mentions both senatorial and representative districts. That the county courts have no power as to senatorial districts must be conceded. That the power here conferred as to senatorial districts had reference

to a legislative power reserved by the Constitution to that branch of the government, can not well be disputed. For as to most of the senatorial districts the Legislature has the right to fix the boundaries. If then it appears that the Constitution was reserving to the Legislature the right to legislate as to senatorial districts, is it not reasonable to construe that such was the intent as to representative districts? Both are mentioned together. One clearly refers to a reservation of power in the Legislature, why not the other? But the section says that such districts may be altered "from time to time." How must this be read? That senatorial districts cannot be rearranged oftener than once in ten years is more than evident from the Constitution. That is not denied here. Why say that representative districts are to be changed oftener? Both are mentioned in the same connection. One concededly cannot be changed oftener than once in ten years. That being the situation, what does the expression "from time to time" mean? Does it mean that a county court can upon its own whim, at each and every session, change the representative districts, or does it mean that after each apportionment of representatives to the county, such court shall rearrange the districts? This apportionment is by decennial periods. The changes in senatorial districts are by decennial periods. When the Constitution coupled the two together and used the words "from time to time," did it not refer to decennial periods? Did it not refer to the things which could be done at decennial periods and not otherwise? And, further, when it coupled the two together, and reserved the power to alter and change, was it not a reservation to the Legislature and not to the county court? We think that such was the idea of the Constitution-framers. First, there is no specific grant of power to the county courts. Second, if there was a grant of power to county courts, it evidently referred to decennial periods for the exercise of such power.

But we think that this clause of the Constitution is a reservation of power to the General Assembly or legislative power of the State. This because, (1) it refers to both senatorial and representative districts, and (2) because as to representative districts the General Assembly is given control of the apportionment, and this cannot occur oftener than once in ten years. Such has been the legislative construction placed upon this clause, because at each decennial period, when the Legislature did make the apportionment of representatives to the several counties, such body always by law provided for the division of the counties entitled to more than one representative, and always by law conferred this power upon the several county courts of those counties. These several acts (and they are all in practically the same language) clearly recognize the fact that the Legislature thought the power was reserved to the legislative branch of the government, and so recognizing it transferred the power to county courts in counties interested in the apportionment.

Thus in special session in the year 1882, an apportionment of representatives was made. [Laws 1882, p. 4.] By section one of that act, Jackson county was given four representatives. By section two it is provided: "The county courts of the several counties, in section one of this act named, which are entitled by this apportionment, to two or more representatives, shall, if the same has not been already done, divide their several counties into representative districts, of compact and contiguous territory, corresponding in number to the representatives to which such county is entitled, and in population as nearly equal as may be, in each of which the qualified voters shall elect one representative, who shall be a resident of such district."

All later acts are in the same language with one exception, which will be noted later.

Had the Legislature thought for a moment that the Constitution had already lodged the power of re-

arranging representative districts in county courts, this section granting that power is mere superfluity. Nor would it be necessary to delegate the power to county courts of certain counties, if the general power had been lodged in all county courts by the Constitution. The legislative idea was that it fixed the number of representatives, and how they should be proportioned, and to avoid further trouble there was a delegation to the county courts of the power to fix the boundaries of the districts. But under the Constitution, the Legislature could not act oftener than once in ten years, and as it had no power to act oftener than once in ten years, of course it could not invest a subordinate tribunal with more power than it possessed.

This appears to be the legislative construction of this section. This, of course, is not binding, but only persuasive. We must go to the reason of the provision.

Suppose at one decennial period a certain county under the rule of apportionment fixed by the Constitution, is only entitled to one representative. Suppose after the apportionment has been made and within a few months thereafter, by the rapid growth of a city in the county or of the county itself, its population is much beyond that which would give it two representatives, yet there is no legal way to reach this wrong until the next decennial period. The Constitution has so written it, and it is not for this court, nor county courts to rewrite the Constitution. And again, at some decennial period when county courts have been authorized to act in the matter of subdividing their counties into representative districts, the districts are then properly divided, yet in a short time the population suddenly shifts from one district to the other, this mere inequality, as in the other instance, does not in our judgment authorize action. Why should the makers of the Constitution undertake to prepare a remedy in one case, rather than in the other, when both strike at the same wrong, or imaginary wrong? Both strike at the

question of a given constituency to be properly represented. Both appear to be unjust, but all general provisions of the law may work out injustice in particular cases. It certainly cannot be said that a county court of purely limited and statutory powers should undertake to weed out the inequities growing out of the general provisions of the Constitution and laws. Many constitutional provisions may apparently work hardship, but they were put there to obviate conceived oppressions, and when reasoned out, it will be found that they usually do so obviate them. It was never intended by our constitutional provisions that these changeable bodies, known as county courts, should be vested with the right to change representative districts at each term of the court, as might be demanded by the whims and caprices of the individual members of such body. The Constitution, as far as could be done by the use of general terms, has undertaken to safeguard the interests of the public. Inequalities may appear, and imaginary inequalities may *more often appear,* but in neither event can the organic law be stricken down. The latter day idea of striking down constitutional provisions to meet public emergencies or imaginary public emergencies must find a check in the courts of last resort, or constitutional government might as well be abandoned. This provision, section 9 of article 4 of the Constitution, must be considered in connection with all other provisions to reach a proper construction thereof. We must consider that it refers to all senatorial and representative districts, because the language thereof does not limit it to other districts, or to those senatorial districts involved in counties entitled to more than one State Senator. We must consider it in the light of the fact that the Legislature fixes each ten years the number of representatives, and must name the counties entitled to more than one, if such there are. Not only so, but we must consider it in view of the fact that the

Legislature can in no event act oftener than once in ten years. We must consider it in view of the further fact that, when a decennial apportionment is made, the Constitution contemplates immediate action to see that such apportionment is fully carried out. Some of these we discuss later.

II. By the Act of 1892 (Laws 1892, p. 15) Jackson county was given six Representatives, and was therefore entitled to six representative districts, instead of four as theretofore provided. Section 2 of the apportionment act of 1892 is identical with that quoted from the Act of 1882. The Legislature again recognized that some action upon its part must be taken, and gave authority by law for the county court to act.

In 1901, the wording of the apportionment act is slightly different, and this is the matter we had in view by the remark made in the preceding paragraph. Section 2 of the Act of 1901 (Laws 1901, p. 204) reads: "The county courts of the several counties in section 1 of this act named, which are entitled under this apportionment to two or more representatives, shall, *immediately upon the taking effect of this act,* if the same has not already been done, divide their several counties into representative districts, of compact and contiguous territory, corresponding in number to the representatives to which such county is entitled, and in population as nearly equal as may be, in each of which the qualified voters shall elect one representative, who shall be a resident of his district."

In this act we have the expression, "The county courts . . . shall, *immediately upon the taking effect of this act,* . . . divide their several counties." In the other acts the word "immediately" and its accompanying phrase had not been used. The act required the power to be immediately exercised, provided it had not been previously exercised. In 1892, the county of Jackson was entitled to six representatives, and the

county court then divided the county into six districts. In 1901, Jackson county was apportioned only six representatives, and even if it be conceded that there was then a right to resubdivide the county, yet the power should be in the language of the law "immediately" exercised. It was not so exercised, but the county court has awaited a time when a succeeding United States census was being taken and approaching completion, to exercise a power (if in fact there was one at all, owing to the fact that no change by the apportionment to Jackson county was made between the acts of 1892 and 1901) which should have been promptly exercised in 1901. During all these years, county courts of varying political hues (of which fact we can take judicial notice) have failed to recognize authority for the act of the present county court. They have seemingly heretofore construed the Constitution and laws as we view them. What new light may have been shed we know not and care not, because a reason for the act of the court is of no avail, if the act itself is unauthorized.

III. Nor have we in the views expressed in the first part of this opinion overlooked the provisions of sections 3 and 6 of article 4 of the Constitution. Section 3 we have set out in full hereinabove. That part of section 6 material to this discussion reads: "When any county shall be entitled to more than one senator, the circuit court shall cause said county to be subdivided into districts of compact and contiguous territory, and of population as nearly equal as may be, corresponding in number with the senators to which such county may be entitled; and in each of these one senator, who shall be a resident of such district, shall be elected by the qualified voters thereof."

By these sections there is authority lodged in the county court to subdivide a county into representative districts and in a circuit court to subdivide a county into senatorial districts. There may be a difference be-

tween subdivision of a county into districts, and changing districts theretofore made by subdivision, by some subsequent act of the respective courts. For the point now under discussion, this difference need not be discussed.

Neither court can act until the Legislature acts by way of an apportionment bill. Of course, as to the senatorial districts, if the Legislature fails to apportion, the apportionment may be made by other officers mentioned in section 7 of article 4 of the Constitution, which action upon their part stands in lieu of legislative action and would authorize the circuit court in particular counties to subdivide the counties into senatorial districts. But in either event, the circuit court must act at a time when it appears that the county is entitled to more than one senator. So, too, under section 3, the county court of the county must act at the time when it appears that the county is entitled to more than one representative. This does not mean that either court can act nearly ten years thereafter.

The word "when" as used in sections 3 and 6 of article 4 of the Constitution is equivalent to "at the time that." [St. Louis v. Withaus, 90 Mo. l. c. 648.]

If it be said that these two sections grant a power to the county court in the one instance and to the circuit court in the other, yet the exercise of this power must be within constitutional and legal prescriptions. The power confided to both is dependent upon prior legislative action. In the matter of senatorial districts, nothing is said as to a rearrangement of them by the circuit court or any other body. In neither case can the legislative sanction be given oftener than once in every ten years, and in both cases the contemplation of the law is that the subdivisions shall be at once made, and remain made until the next decennial period. It might be said that injustice would follow in later years from the division made of senatorial districts in a county entitled to more than one senator, yet there

is no legal way to escape it.   What would be a fair division of a county at one time, might be apparently inconvenient, if not unfair, later, but no authority is vested anywhere to authorize a change.   If this be true as to the senatorial districts of a single county, why should there be a different rule as to representative districts?   If circuit courts were not to be invested with plenary power to redivide such counties *ad libitum*, by what reason can it be urged that county courts were given such powers by mere implication?

It is true that section 9 of article 4 says that "senatorial and representative districts may be altered, from time to time, as public convenience may require," yet this language is applied to all senatorial districts and not merely to districts within a single county.   It is clear that as to all senatorial districts save and except those within a single county, the power to fix the lines thereof lies with the Legislature, or in the event of its failure to act, with the Governor, Secretary of State and Attorney-General.   Could it then be said that as to senatorial districts, this section 9 referred more to the powers of the circuit courts than to the powers of the Legislature?   We think not.   Yet the language is as definite as is the language referring to legislative districts.   As stated before there is an evident reservation of power in this clause, but it is to the Legislature and not to the courts, either circuit or county.

IV.   But going further into the provisions of sections 3 and 9 of the Constitution, let us see how they stand.   Section 3 provides for the county court to subdivide the county into representative districts.   It provides that this shall be done "when," *i. e.,* "at the time that," the county is entitled to more than one representative.   No other time is mentioned for this subdivision.   The matter of determining the number is with the Legislature, and this apportionment cannot

be oftener than once in ten years. This is fixed by section 7, which reads thus: "Senators and representatives shall be chosen according to the rule of apportionment established in this Constitution, until the next decennial census by the United States shall have been taken, and the result thereof as to this State ascertained, when the apportionment shall be revised and adjusted on the basis of that census, and every ten years thereafter upon the basis of the United States census; or if such census be not taken, or is delayed, then on the basis of a State census; such apportionment to be made at the first session of the General Assembly after each such census."

Grant it now that section 3 confers a limited power upon the county court to subdivide (and the power is a dependent and limited one, by every term of the Constitution), yet if we are to say that section 9 providing for the alteration of senatorial and representative districts, is a thing different from subdividing the county into districts, then we have no express power granted to the county court for that purpose. This section is too general in terms to enable us to say there is express power either in the circuit court or county court. If it be said that there is express power at the end of decennial periods, and after legislative action, yet it cannot be said that there is power given for a further disarrangement of either senatorial or representative districts. Under the one section, i. e., section three, there may be said to be express authority, but when this is said it would seem to exclude the idea of further delegation of power to the county court. In other words, if the framers of the Constitution have, concerning a given subject-matter, seen fit to designate the county court as the residuum of power, but have failed to so mention it on a closely related subject, it must be taken that the intent was to reserve that power to the only body which speaks for the people, i. e., the Legislature. This is peculiarly true when

the power granted goes to both circuit and county courts, and the power is one not usually exercised by such bodies. This power is legislative in character, and when such powers are conferred upon other bodies, in instances where they can be conferred, the presumption is that the power does not extend beyond the express terms of the grant. County courts are denied any rights except those expressly conferred. [Constitution, sec. 36, art. 6.] This section 9 of article 4 is merely directory in terms, and in our judgment reserves to the Legislature the right to provide for the alteration of legislative districts once established as per the terms of the Constitution. In other words the Constitution contemplates that these districts shall be established at decennial periods, but has reserved a power in the Legislature to provide by law for a change in the same. This, upon the theory that there is a difference between dividing a county into districts, and afterward changing the boundary lines of those districts. That this power is reserved to the Legislature is further emphasized by the fact that section 9 does not, within itself, undertake to prescribe the conditions under which the changes or alterations should be made. Nor does it undertake to prescribe the method of determining the requisites for such changes. These things were evidently left for legislative determination, and the Legislature has not acted. This section 9 only speaks of changes when "public convenience may require." It places no restrictions as to compact and contiguous territory. It contains no safeguards whatever. Upon its face it is not self-executing, but clearly indicates that there was to be legislative action. If so, then how does it authorize action upon the part of the county court. Unless it can be said that this section is self-executing, the whole of respondents' claims fail. So that, in addition to the construction to be given to the words "from time to time" as applied to both senatorial and representative

districts, we are confronted with this further barrier. To give section 9 the construction contended for by respondents, it must stand alone. As above indicated, the use of the phrase "from time to time," if not considered as the decennial period, precludes the idea of making both sections 3 and 9 stand together. If section 9, to give it respondents' construction, must stand alone, then as above indicated, (1) it fails to confer any power upon the courts, either as to senatorial or representative districts, and (2) it upon its face is not self-enforcing, and contemplates and requires legislative action. In other words, it is a reservation of power to the Legislature and not a conference of power upon the courts. We hardly think the language of this section self-enforcing. [State ex rel. v. Gibson, 195 Mo. l. c. 260.]

Let it be said that there is a direction therein contained to the effect that both senatorial and representative districts may be altered between decennial periods for public convenience, yet it is not therein said by whom to be altered, nor what guide-posts shall be observed in the alteration. This strongly tends to show that this clause of the Constitution was intended to give legislative authority to act, and by proper laws provide for such alteration or changes in previously established districts, but not to confer upon courts a power not usually exercised by them.

Pursuing the same thought as hereinabove expressed, but going a step further, permit just one illustration suggested by the briefs. Suppose an apportionment bill has been passed. Suppose in accordance therewith the county court of a given county, having authority by reason of section 3 of article 4 of the Constitution and the apportionment bill (because it requires both), had divided such given county into representative districts. Suppose that thereafter the Legislature, undertaking to act under section 9 of article 4 of the Constitution, passed a law, by the

terms of which it should be provided that when the population of legislative districts of given counties had so shifted as to make it inequitable for them to longer remain as first divided by the county court under section 3, supra, and by which it should be further provided that in such event one hundred voters of such county might petition to the circuit court charging such condition, and that such court, upon proper notice being given, could investigate the facts, and if the charges in the petition be found to be well laid, then said court could in person or by its proper commission proceed to change such previously established boundary lines in accordance with the facts ascertained by its investigation, could it be said that such a law would be in violation of the Constitution? We think not. Yet it would be, if the contention of the respondents be good. Their contention is that this clause has lodged the power to alter previously constructed districts in the county court, and any law giving the power to the circuit court, or any other body, would therefore violate the terms of the Constitution.

This illustration demonstrates to our mind the folly of respondents' contention, and emphasizes the fact that this particular clause of the Constitution is not self-executing, but contains a reserved power to the Legislature. But going to the history of this section 9 of article 4. To my mind, as conclusive of the fact that our present section 9 of article 4 is a reservation of power to the Legislature and not a conference of power upon the courts, is the history of the section. In the Constitution of 1820 will be found its origin. Article 3 of that Constitution is entitled, "Of the Legislative Power." Note the language, "Legislative Power." In that article and *under that heading* is found section 6, which reads: "The Senate shall consist of not less than fourteen nor more than thirty-three members; for the election of whom the State shall be divided into convenient districts, which

may be altered from time to time, and new districts established, as public convenience may require; and the Senators shall be apportioned among the several districts, according to the number of free white male inhabitants in each: Provided, That when a senatorial district shall be composed of two or more counties, the counties of which such district consists shall not be entirely separated by any county belonging to another district, and no county shall be divided in forming a district.''

Here for the first time, appears the idea of altering districts ''for public convenience,'' and it was absolutely with the Legislature.    At that time each county was allowed at least one Representative, but the total number should not exceed one hundred.   See section 2, art. 3, Const. of 1820.   No grant of power to any court.   The whole matter at that time was one for the consideration of the Legislature.

The idea expressed in section 6 of article 3 of the Constitution of 1820, found expression in section 8 of article 4 of the Constitution of 1865, in this language:   ''Senatorial and representative districts may be altered, from time to time, as public convenience may require.   When any senatorial district shall be composed of two or more counties they shall be contiguous.''

From these sources came section 9 of article 4 of the Constitution of 1875, supra.   In its origin therefore it clearly referred to the Legislature and not to any other body.

So when we take the context of the present article 4, and the origin of section 9 therein, it appears to us clear that there is a reservation of power to the Legislature, and until the Legislature acts with reference to the alteration of the districts established under section 3, there can be no action by the courts.   The Legislature perhaps can act by laws duly passed, and in so doing can delegate its constitutional powers over

the subject-matter but up to this time it has not been done. Until such time as the Legislature may legally provide for the alteration of legislative districts, there is no such power in the county courts.

But exclusive of the origin of the act, and exclusive of other matters mentioned, let us view these sections 9 and 3 from another standpoint. Section 3 clearly refers to decennial periods only. It clearly contemplates the taking of the United States census reports as the basis for fixing the districts. Now, if it be urged, as it is urged, that, between decennial periods, county courts should rearrange these legislative districts, from whence would they get their information as to the shifting of population from one township to the other, or from one ward of the city to the other? In other words, how is the fact of population to be known? The United States census reports gives the population by townships and wards (as to Jackson county, Missouri, for 1890 and 1900, see vol. 1, 12th Census Reports, p. 241, and preceding reports), and with this as a basis it can be seen how the districts could be equitably arranged. But how could it be done later without some legislative action? If there was a shifting of population from township to township or from ward to ward, how could this fact be determined without legislative action authorizing a State census to be taken for that purpose, or adopting a State census taken for other purposes? Did the Constitution mean to leave the matter as a mere guess upon the part of the county court, or did it mean to leave it to the Legislature to provide rational means and methods for the county court to follow in ascertaining what changes should be made? Does this section contemplate power in county courts, without a census or other basis upon which to act, to make changes in districts fixed upon the basis of definite information (the U. S. Census), or does it mean that in the Legislature is the reserved power to control the question of both senatorial and legislative districts, by

prescribing by law for an equitable and definite method of determining whether changes should be made, and how they should be made? We think it means the latter. How could a county court say that changes should be made, without knowing from some proper source the population of the respective wards and townships? By what sufficient evidence did this county court reach the conclusion reached in the order quashed? No new census had been taken. No satisfying evidence to a court was authorized by law. At best it could be but a guess, which guess might be tinctured by the whims and caprices of the individual members of the court. By looking at the United States census reports, supra, it will be seen that Washington township, Jackson county, in 1890 had a population of 1558, and in 1900 had a population of 1829. By what means could the county court determine what the population was in 1910? What is said of Washington township applies with equal force to each township and each city ward in the county.

All of this but emphasizes the fact that the Constitution, by section 3, authorized the division of counties into legislative districts at the times (the decennial periods of the U. S. Census) when the evidence was at hand, and that section 9 was a reservation of a power in the Legislature to make provisions for readjusting the districts, if the Legislature saw fit so to do. The Legislature could by law, under authority of section 9 of article 4 of the Constitution, provide for a means of determining how and where the districts ascertained under section 3 should be changed, but this power the Legislature has never used. No law has been passed prescribing a course of procedure for the rearrangement of legislative or senatorial districts between decennial periods.

For these reasons we are of opinion that the judgment heretofore entered in this case is the only one which could have been entered.

Such judgment comports with the Constitution and laws of the State, and that of the county court, which was quashed, was in violation thereof. *Fox, C. J., Gantt,* and *Valliant, JJ.,* concur; *Woodson* and *Burgess, JJ.,* do not sit; *Lamm, J.,* dissents.