PAUL W. PREISLER, (Plaintiff) Appellant, v. MICHAEL J. DOHERTY, DANIEL J. NACK, ISAAC C. ORR, and WILLIAM E. BUDER, as Members of the Board of Election Commissioners of the City of St. Louis; WALTER H. TOBERMAN, Secretary of State of the State of Missouri; JOHN M. DALTON, Attorney-General of the State of Missouri, (Defendants) Respondents, OSCAR A. MUELLER, and MICHAEL FITZGERALD, (Intervenor-Defendants) Respondents, No. 44808—284 S. W. (2d) 427.

Court en Banc, November 14, 1955.

Rehearing Denied, December 12, 1955.

*Paul W. Preisler,* pro se.

462

*James M. Douglas* for Michael J. Doherty, Daniel J. Nack, Isaac C. Orr and William E. Buder as Members of the Board of Election Commissioners of the City of St. Louis, defendants-respondents.

*Maurice Schechter* for Oscar A. Mueller and Michael Fitzgerald, defendant-intervenors-respondent.

464

[430] HYDE, J.—Action for declaratory judgment to determine validity of the 1952 division of the City of St. Louis into seven senatorial districts. The present Board of Election Commissioners, which did not make the challenged redistricting and have been substituted for the members of the former Board who did make it, filed answer denying the invalidity of the redistricting. However, their answer also contained a counterclaim asking for a declaratory judgment, if the redistricting should be declared unconstitutional and void, which would determine the authority of the present Board to create new senatorial districts. The other defendants also filed answers denying invalidity of the redistricting and certain voters were allowed to intervene and answer as proponents of the validity of the redistricting. [431] The trial court dismissed plaintiff's petition with prejudice and plaintiff has appealed.

This matter was previously before us in Preisler v. Doherty, 364 Mo. 596, 265 S. W. (2d) 404, in which we held that Count 2 of plaintiff's petition (the basis of this case) stated a claim for declaratory relief but that Count 1 (based on plaintiff's claimed right to run for the office of state senator at large in the 1952 election) was moot and properly dismissed. This redistricting was also challenged in State ex

rel. Sommer v. Calcaterra and State ex rel. Scott v. Calcaterra, 362 Mo. 1143, 247 S. W. (2d) 728, in which we denied prohibition against the Board, to prevent conducting primary and general elections in these senatorial districts. (We will refer to the Board of Election Commissioners making the redistricting as "the Board" and to their successors as "the present Board.") This writ was denied on the ground that redistricting was a legislative function; holding that prohibition will not lie to control administrative, ministerial or legislative functions, but only to prevent bodies exercising judicial or quasi judicial functions from doing unauthorized acts or acts in excess of the authority vested in them. In this present case, the matter of the validity of this redistricting is directly presented on the merits.

It is well settled that courts have jurisdiction and authority to pass upon the validity of legislative acts apportioning the state into senatorial or other election districts and to declare them invalid for failure to observe non-discretionary limitations imposed by the Constitution. (State ex rel. Barrett v. Hitchcock, 241 Mo. 433, 146 S. W. 40 and cases cited 241 Mo., l.c. 473; Annotation A.L.R. 1337; 18 Am. Jur. 191-201, Sec's. 16-31; 16 C.J.S. 438, Sec. 147; See also Jones v. Freeman, Okla., 146 Pac. (2d) 564, stating l.c. 570, that the courts of 38 states had exercised this power.) However, as these authorities show, the courts may not interfere with the wide discretion which the Legislature has in making apportionments for establishing such districts when legislative discretion has been exercised. It is only when constitutional limitations placed upon the discretion of the Legislature have been wholly ignored and completely disregarded in creating districts that courts will declare them to be void. In such a case, discretion has not been exercised and the action is an arbitrary exercise of power without any reasonable or constitutional basis. As said in a leading case (State ex rel. Lamb v. Cunningham, Wis., 53 N. W. 35, 55): "If, as in this case, there is such a wide and bold departure from this constitutional rule that it cannot possibly be justified by the exercise of any judgment or discretion, and that evinces an intention on the part of the legislature to utterly ignore and disregard the rule of the constitution in order to promote some other object than a constitutional apportionment, then the conclusion is inevitable that the legislature did not use any judgment or discretion whatever." Likewise, In re Sherill, N.Y., 81 N. E. 124, 128, the Court said: "But, if the Legislature under the assumption of an exercise of discretion does a thing which is a mere assumption of arbitrary power, and which, in view of the provisions of the Constitution, is beyond all reasonable controversy, a gross and deliberate violation of the plain intent of the Constitution, and a disregard of its spirit and the purpose for which express limitations are included therein, such act is not the exercise of discretion, but a reckless disregard of that discretion which is intended by the Constitution. Such an exercise of arbitrary power is not by

authority of the people. It is an assumption, and, when it is claimed that an act is thus in violation of the Constitution, a question of law is presented for the determination of this court." Thus, in the matter of districting, as well as in other matters, the Legislature has no authority to enact unconstitutional laws.

Those cases, and others cited (241 Mo., l.c. 473), involved apportionment laws of state legislatures. However, in this case, we are not dealing with a law enacted by our General Assembly, which as a coordinate branch of [432] our government has all of the legislative power of the State except that denied it by express limitations of the Constitution. This is true because the 1945 Constitution has taken away from the General Assembly the whole matter of senatorial districting. (Art. III, Sec's. 5, 7 and 8, 1945 Const.) Section 7 provides for a commission to redistrict the State after each United States decennial census. Section 5 provides that no county shall be divided in making districts composed of more than one county; and, no doubt, because of this provision, Section 7 authorizes a variance in population of districts which shall not be more than one-fourth of the quotient of the division of the population of the State by the number of districts. When this commission allots more than one Senator to any county or to the City of St. Louis, Section 8 provides for local districting by local administrative officers. In the City of St. Louis this is "the body authorized to establish election precincts", which is the Board of Election Commissioners. (Sec. 118.150, statutory references are to RSMo. and V.A.M.S. except when otherwise noted.) Thus, in this case, we are considering acts of administrative officers who have been delegated very limited legislative power for a single purpose, namely: to divide the City into senatorial districts "of contiguous territory, as compact and nearly equal in population as may be." There is even good authority for proceeding against such officers by mandamus when they have not followed mandatory constitutional provisions in districting. (See Attorney General v. Suffolk County Apportionment Commissioners, 224 Mass. 598, 113 N. E. 581; Donovan v. Suffolk County Apportionment Commissioners, 225 Mass. 55, 113 N. E. 740; State ex rel. Herbert v. Bricker, Ohio, 41 N. E. (2d) 377.) Moreover, they are not limited to any subdivision lines (wards, etc.) except by necessity to precincts which they make and may revise at any time. (Sec. 118.150) Therefore, it is obvious that it is much easier for them to make compact districts than for a legislature or commission restricted to county lines (or following town, ward or other district lines) and that there can be no reasonable basis for failing strictly to follow this mandatory constitutional requirement. Furthermore, the Political Atlas of the City in evidence, showing there are many reasonably compact Wards, Legislative Districts, Magistrate Districts and Congressional Districts, in the City, indicates there is no necessity for the departure from constitutional standards shown in this case.

■ With these principles in mind, we will consider the facts of this case; and in doing so, we will consider all the evidence duly preserved, which we find to be admissible, whether rejected by the trial court or not (Sec. 510.310) taking judicial notice of some generally known facts and official records. Maps of the City showing all seven districts, and of the districts separately, show that none of them are compact. Topographical maps of the City made by the United States Geological Survey show that this lack of compactness is not due to physical features of the area or works of man in the area. In fact, such features and works that might be reasonable natural boundaries are disregarded. For example, in the 3rd District, the large open space of Forest Park is in the center with 30 precincts on the south side and 25 precincts on the north side; and also three precincts are included on the east end of the Park from another ward, which are completely separated from the precincts north and south of the Park. It also includes a long strip separated from the Park by the west branch of the 5th District. In the 4th District there are precincts on both sides of the railroad yards. Likewise, in the 5th District, the main business section of the City separates the two parts of the District; one part extending north from the business section and the other extending west.

The general description of the seven districts is as follows: The 1st District extends around the southern boundary of the City and is what is described in some of the cases as a hollow district. It surrounds a large part of the 2nd District. The 2nd District is somewhat in the form of the letter "T". The south part of the top of the "T" which is the largest part, extends [433] into and is surrounded on three sides by the 1st District. The 3rd District has previously been described as separated into three parts by Forest Park. From its north part a long strip averaging about four precincts in width, extends east between even narrower (in some places) strips of the 5th and 7th Districts. The 4th District extends from the Mississippi River to Forest Park, a distance of more than four miles, and is wider at both ends than in the middle. The most flagrant violations of the constitutional requirement of compactness are the 5th and 7th Districts. The 5th District is in the form of the letter "L". One part extends from the business section in a general north and south direction about four miles along the Mississippi River. The other part extends west from the River more than five miles, the westernmost part extending along the northern boundary of Forest Park and separating the long east and west strip of the 3rd District from the Park. Each part of the 5th District is only one precinct wide in one place and much of the western branch is only two and three precincts wide. This District winds through seven wards of the City, including only two of them complete. The 7th District winds through six wards of the City, likewise including only two of them complete, from the western limits of

the City almost to the Mississippi River, about six miles in length, being cut off from the River by a narrow strip of the northern branch of the 5th District in that area, which is there only one and two precincts in width. Connecting the two wards taken in complete in the 7th District is a long narrow strip more than a mile in length and only two precincts wide. The 6th District contains an area in the northern part of the City which is reasonably compact but it has two branches extending south from it, the eastern branch being surrounded by parts of the 5th and 7th Districts. (Attached as an Appendix to this opinion are diagrams of the 5th and 7th Districts.)

The 1950 population of the City was 856,796 so that exact equality of division would give each of the seven districts 122,399. However, since there were no census figures by precincts, but only by wards, there are no accurate figures on the population of these districts and it cannot be known exactly how many people are in each or any of them. While there are no constitutional or statutory provisions restricting the Board to ward lines, it is obvious that too great a departure from them would make it impossible to actually use the last decennial census in determining the population of the districts as required by Sec. 10, Art. III of the 1945 Constitution. This is certainly true as to the 5th and 7th Districts, with each taking only a part of the precincts of four or five wards. (Generally wards have from 25 to 30 precincts.) The Board's estimate, which it appears was made by assuming that the precincts in each divided ward were equal in population (Sec. 118.150 requires precincts to contain approximately 500 voters), together with the variance from exact equality and the number of precincts in each district, is as follows:

| "District | Precincts | Population | Over Quotient | Under Quotient |
|---|---|---|---|---|
| 1 | 126 | 127,831 | 5,432 | |
| 2 | 113 | 119,748 | | 2,651 |
| 3 | 110 | 121,246 | | 1,153 |
| 4 | 92 | 110,691 | | 11,708 |
| 5 | 125 | 132,675 | 10,276 | |
| 6. | 112 | 111,862 | | 10,537 |
| 7 | 116 | 132,743 | 10,344 | '' |

Thus it appears from the Board's own estimate that the most extreme violations of the standard of compactness (5th and 7th Districts) were not made for the purpose of obtaining equality of population but instead created the greatest inequality. On this subject, in the Barrett case (241 Mo., l.c. 481), commenting [434] on a similar situation, this Court said this "shows that collectively the greatest variances in population are in the districts which are the least compact, or, in other words, it shows that compactness was not sacrificed in order to obtain equality in population, nor vice versa." In State ex rel. Lamb v. Cunningham, supra, (53 N. W., l.c. 58) the Court said of such a situa-

tion: "Compactness, being of lesser importance, may, to some extent, yield in aid of securing a nearer approach to equality of representation; but in some instances, in the act in question, it is made to yield in aid of securing inequality of representation." In the Sherill case, supra, (81 N. E., l.c. 132) the Court held a redistricting act of the Legislature void, commenting on a district more nearly compact than either the 5th or 7th Districts in this case (see diagram 81 N. E., l.c. 126), as follows: "A reference to the diagram will show how grossly the provision of the Constitution in regard to compactness has been violated in the Thirteenth senatorial district which is within the county of New York. All of the territory of the county of New York comprising that portion of Manhattan Island shown on the diagram is comparatively level and fully covered by blocks bounded by streets, on which blocks buildings have been erected for business or residential purposes, and no possible purpose for the exercise of discretion to make a district that is not reasonably compact has been shown, and no effort whatever seems to have been made to make the district mentioned in as compact form as practicable. * * * A reference to the boundaries of the senate districts in said county as made by the constitutional convention shows that the county can be divided into districts which are reasonably compact; each having comparatively few sides and angles. (We·interpolate that the first St. Louis senatorial districts under the new Constitution, made in 1946, while not models, are mostly more compact than those herein involved. See State ex rel. Davis v. Ramacciotti, Mo. Sup., 193 S. W. (2d) 617.) Within the limits of a city entitled to many senators the requirements for compactness would seem to exclude all possibility of a district in the shape of the Thirteenth senatorial district as shown on the diagram. In re Timmerman (Sup.) 100 N. Y. Supp. 57. The disregard of constitutional provisions in forming the Second and Thirteenth senate districts is clear, and they so affect the entire apportionment as to make it necessary to declare the act wholly unconstitutional and void." It was well stated in People ex rel. Woodyatt v. Thompson, 155 Ill. 451, 40 N. E. 307: "There is a vast difference between determining whether the principle of compactness of territory has been applied at all or not, and whether or not the nearest practical approximation to perfect compactness has been attained. The first is a question which the courts may finally determine; the latter is for the Legislature." It is obvious from the record in this case not only that departures from compactness were not made to obtain equality of population, but also that the departures from ward lines in making districts were not used to obtain compactness but instead aided in making them less compact, more irregular, longer and narrower. We think the only reasonable conclusion from the facts in this case is that the Board did not apply the principle of compactness of territory in the 1952 redistricting but in-

470

stead completely disregarded this mandatory provision of the Constitution.

Intervenors cite People ex rel. Woodyatt v. Thompson, 155 Ill. 451, 40 N. E. 307; People ex rel. Barrett v. Anderson, 398 Ill. 480, 76 N. E. (2d) 773, l.c. 779; People v. Deatherage, 401 Ill. 25, 81 N. E. (2d) 581; State ex rel. Hopkins v. Tindell, 112 Kan. 256, 210 Pac. 619; Attorney General v. Secretary of Commonwealth, 306 Mass. 25, 27 N. E. (2d) 265; Graham v. Special Commissioners, 306 Mass. 237, 27 N. E. (2d) 995; Stenson v. Secretary of State, 308 Mich. 48, 13 N. W. (2d) 202; People ex rel. Carter v. Rice, 135 N. Y. 473, 31 N. E. 921; In the Matter of the Application of George Smith v. Board of Supervisors, 148 N. Y. 187, 42 N. E. 592; Matter of Dowling, 219 N. Y. 58, 113 N. E. 545; In the Matter of Richardson et al., 307 N. Y. 269, 121 N. E. (2d) 217. They rely most strongly on the Richardson case. There were dissenting opinions in both the Appellate Division (132 N.Y.S. (2d) 249) and in the Court of Appeals but the [435] majority held the evidence (apparently only maps of the districts) insufficient to sustain the allegations of the petition concerning purposes of the reapportionment or to show the territory was "not convenient, contiguous and in as compact form as practicable." The Court noted the four assembly districts reapportioned were required to be in the same Senate district and that the shifting of the Senate district lines required the new Assembly district lines to be altered to conform to the Senate district boundaries and to enclose territory in which the inhabitants, excluding aliens, were as nearly equal in number as may be. In making the districts herein involved, the Board had the whole City from which to make them and it did not have the problem of excluding aliens. Moreover, there is more in this record than maps of the districts and it appears that worst violations of the standard of compactness were not made to obtain equality of population but achieved the opposite result. The other cases cited do not involve such flagrant violations of the standard of compactness; some are cases in which town or county lines had to be used and others involve the true exercise of legislative discretion. Intervenors argue that the Barrett case is not applicable, citing the statement in one of the concurring opinions (241 Mo., l.c. 520) that everything except the last paragraph was dictum. However, that was the view of only two of the judges, the majority concurring in the ruling that the entire 1911 apportionment act was "unconstitutional, null and void" (241 Mo., l.c. 509); and we judicially know that this apportionment so declared void was never followed or considered in effect, but that instead the 1901 apportionment remained in effect. (See Sec. 12894 RS 1939.) Intervenors also seek to distinguish the Sherill case, supra, because of a provision of the New York Constitution about judicial review, (81 N.E., l.c. 126.) However, we agree with the following statement of the Supreme Court of Oklahoma about this matter in Jones v. Freeman, supra, (146 Pac. (2d), l.c.

570): "Most of the courts, in passing upon the constitutionality of legislative apportionment acts, have based their jurisdiction upon the broad ground that it is always a proper function of the courts to pass upon the constitutionality of acts of the Legislature when their jurisdiction is properly invoked, and they have not thought it necessary to find express constitutional authority for such action."

Certainly the framers of the Constitution did not intend for senatorial districts to be laid out according the the free will and caprice of the officers charged with that duty. The requirements of contiguity and compactness were placed there for a purpose. Our original Constitution of 1820 did not contain them. (See Sec. 6, Art. III, Const. 1820, 1 V.A.M.S. 79.) No doubt they were found to be necessary to the preservation of true representative government and they appear in the 1875 Constitution in substantially the same form as in the present Constitution. (See Sec's. 5, 6 and 9, Art. IV, Const. 1875, 1 V.A.M.S. 177-179.) It has been stated that the purpose of these requirements was " 'to guard, as far as practicable, under the system of representation adopted, against a legislative evil, commonly known as the "gerrymander," and to require the Legislature to form districts, not only of contiguous, but of compact or closely united, territory.' " (State ex rel. Barrett v. Hitchcock, supra, 241 Mo., l.c. 497; See also 2 A. L. R. 1337.) As said in State ex rel. Lamb v. Cunningham, supra, (53 N. W., l.c. 59) "Such constitutional mandate and standards cannot be broken down or rendered inoperative on the theory of discretionary power." There is no discretion to violate mandatory provisions of the Constitution; certainly not by these administrative officers. We must hold that this 1952 redistricting violates the Constitution and is unconstitutional and invalid.

The result we reach makes it necessary to consider the present Board's alternative counterclaim for declaratory judgment. Plaintiff's contention is that, if the districting is invalid, senatorial candidates from St. Louis must run from the State at [436] large as provided in Sec. 22.030. The present Board asks us to "determine whether the senatorial candidates from the City of St. Louis must run from the State at large as provided by Mo. Rev. Stat. Section 22.030 or whether these defendants, as members of the Board of Election Commissioners of the City of St. Louis, are authorized and directed by law to create new senatorial districts in the City of St. Louis."

Sec. 8, Art. III, 1945 Constitution, applies to senatorial districts in counties entitled to more than one senator, and the City of St. Louis is a county for this purpose. Sec. 8 charges the Board of Election Commissioners in the City of St. Louis with the duty of dividing the city into senatorial districts in accordance with the standards therein set out. This duty is further enjoined and amplified by Sec. 22.030. We think that the Board of Election Commissioners has a continuing duty to make a valid redistricting. (See Jones v. Freeman, supra, 146 Pac.

(2d), l.c. 573 and cases cited.) Unlike the State Senatorial Apportionment Commission, the Board of Election Commissioners has a continuous existence and, having failed to discharge its duty under the Constitution and statutes, the Election Board is not relieved of its obligation. Neither the Constitution nor the statutes contain any provision terminating the authority and responsibility of the Election Board to make a legally proper redistricting. Sec. 22.030 provides for the election at large of the senators "to be elected at the next election" for failure of the Election Board to comply with the section. But it does not say that the election of senators at all succeeding elections until the next decennial census shall be at large. We hold that the Board of Election Commissioners has a continuing duty to divide the City of St. Louis into senatorial districts complying with constitutional and statutory requirements.

Further evidence of intention to provide a continuing duty and obligation to make a valid redistricting is found in Sec. 10, which (referring to both senatorial and representative districts), provides: "Such districts may be altered from time to time as public convenience may require." Certainly public convenience requires it now that the present division of the City of St. Louis into districts has been held invalid. A similar provision for altering districts was contained in Sec. 9, Art. IV, of the 1875 Constitution, but that section, unlike present Sec. 10, also related to districts of two or more counties; and in State ex rel. Major v. Patterson, 229 Mo. 373, 129 S. W. 888, this provision was held to refer only to the power of the Legislature and not of a county court. The ruling in that case was that, after valid legislative districts had once been established, the county court could not again redistrict the county during the same decennial period. Under the 1945 Constitution this provision for altering districts can no longer refer to the power of the Legislature because now it has no power of apportionment of either senators or representatives. (Sec's. 2 and 7; Art. III, 1945 Constitution.) The power to apportion senators is in a commission provided in Sec. 7, Art. III, 1945 Constitution; and that section provides that in case of failure of a commission to make the apportionment after a decennial census, then a new commission is required to be appointed after the next election. When no apportionment is made by a commission, senators must run at large in the next election. Thus all senatorial districts must go out of existence after each decennial census and the provision that they "may be altered from time to time" must mean they can be altered any time a commission makes an apportionment. The times when a commission can act to alter districts is stated in Sec. 7, and, since the Legislature now has no power over this matter, this power stated in Sec. 10, Art. III, 1945 Constitution, must have been intended to apply to the local authority, the County Court or the Board of Election Commissioners, which are the only tribunals having power to district counties entitled

to more than one senator. (Sec's. 3, 8 and 10, Art. III, 1945 Constitution.) However, in accordance with the reasoning of State ex rel. Major v. Patterson, supra, we think only one valid [437] apportionment is intended for each decennial period. This must be true because the decennial census is made the basis of reapportionment.

The policy shown by all of the constitutional provisions herein discussed is against senators running at large and that requirement is limited to the emergency situation provided for in Sec. 7, Art. III, 1945 Constitution, applicable only to the next election after a commission fails to make any apportionment. We think the provision in Sec. 22.030 for senators running at large likewise was intended to be applicable only to the next election after a County Court or Board of Election Commissioners failed to make the certification it requires and did not take away their authority to make districts and timely certify them before a subsequent election. In this case, there has been at least technical compliance with the terms of Sec. 22.030 by the Board's certification of districts made prior to March 1, 1952, after the Secretary of State's certification to it of the apportionment made by the 1951 Senatorial Apportionment Commission; and senators have been elected from all of the districts so certified. We, therefore, hold that when a division of a county or of the City of St. Louis into senatorial districts is made and held unconstitutional and invalid, that the local tribunal designated by Sec. 8, Art. III, 1945 Constitution, has the continuing authority and duty to divide the county or city into such districts; and in such case it is a substantial and sufficient compliance with the provisions of Sec. 22.030 if this is done and certified to the Secretary of State on or before March first of the year of the next general election.

It should be pointed out that Sec. 10, Art. III, 1945 Constitution, requires that the last decennial census shall be used for this purpose. It should also be stated that the terms and tenure of the senators elected from these districts in 1952 and 1954 cannot be affected by redistricting. As we said in Preisler v. Doherty, supra, (265 S. W. (2d), l.c. 407) we judicially know that the senators from all of these districts have been elected and have been seated by the Senate; and that "under Section 18 of Article III of the Constitution the state senate shall be and is 'the sole judge of the qualifications, election and returns of its own members.'" (See also Jones v. Freeman, Okla., 146 Pac. (2d) 564 and cases cited, l.c. 574.) If a valid redistricting is timely made, senators will be elected from the new odd numbered districts in 1956 and from the new even numbered districts in 1958. (Sec. 11, Art. III, 1945 Const.)

The judgment is reversed and because of the time element involved, and in order to give the present Board more time to divide the City into senatorial districts based on the last decennial census, instead of remanding to the circuit court with directions to enter de-

FIFTH DISTRICT

Revised Feb. 1

[439]

Revised Feb. 1952

SEVENTH DISTRICT

claratory judgments in accordance with the rulings herein made, we will here and now "give such judgment as such court ought to have given" as authorized by Sec. 512.160(3). It is, therefore, adjudged, decreed and declared that the seven senatorial districts established in 1952 and certified to the Secretary of State of Missouri by the Board of Election Commissioners for the City of St. Louis on Februrary 1, 1952, and filed in the office of the Secretary of State on February 4, 1952, do not comply with the provisions of Sec. 8, Art. III of the Constitution of Missouri; that this districting is unconstitutional and invalid; and that hereafter Senators cannot be nominated and elected from said districts, either in the year 1956 or thereafter. It is further adjudged, decreed and declared that the present qualified and acting Board of Election Commissioners for the City of St. Louis is authorized to and has the duty to create seven new valid senatorial districts in the City of St. Louis from which Senators may be nominated and elected in the year 1956 and thereafter, until after the next decennial census of the United States. All concur.

### [440] ON MOTION FOR REHEARING

PER CURIAM:—Intervenors have filed a motion for rehearing, as have defendants Secretary of State and Attorney General, contending that Section 510.140 (statutory references are to RSMo. and V.A.M.S.) prevents this Court from entering judgment here upon the authority of Section 512.160(3). They say Section 510.140 makes it mandatory for this Court to remand this case for them to present evidence.

We find no merit in this contention. In the first place, the actual defendants in the case (the only necessary parties) filed no motion in the trial court, to dismiss or otherwise, and did not join in intervenors' motion, so obviously they submitted the case on the evidence offered by plaintiff. Furthermore, intervenors in their motion at the end of the trial (both orally and in writing) moved "the Court *to enter up a judgment in favor of these defendants* and to dismiss Plaintiff's Petition at plaintiff's costs for the reason that under the law and the evidence in this case, plaintiff is not entitled to any of the relief prayed for in his Petition." Our conclusion is that this cannot be construed as a motion under Section 510.140 but instead was a motion for a judgment declaring the validity of the redistricting involved, and amounted to a final submission of the case. That was the proper procedure in a declaratory judgment case where it is the express duty of the trial court to make a declaration of rights regardless of which party is entitled to it. (Smith v. Pettis County, 345 Mo. 839, 136 S. W. (2d) 282; Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S. W. (2d) 39; Strype v. Lewis, 352 Mo. 1004, 180 S. W. (2d) 688; King v. Priest, 357 Mo. 68, 206 S. W. (2d) 547.) Intervenors say the

italicized portion of their motion is surplusage and should be disregarded. However, for the reasons stated we hold that it must be considered and upon the whole record we find that all parties made a final submission of the case. Therefore, Section 510.140 is not available to intervenors in this Court.

The motion for rehearing is overruled.