STENSON *v.* SECRETARY OF STATE.

1. STATES—REPRESENTATIVE DISTRICTS—APPORTIONMENT—FORMA-
TION.
    In passing a reapportionment act, the legislature may properly
    construe the constitutional provision that State representative
    districts "shall consist of convenient and contiguous terri-
    tory" as requiring that districts be created of counties hav-
    ing land contact or that districts consist of counties that are
    contiguous only through navigable water (Const. 1908, art. 5,
    §§ 3, 4; 1 Comp. Laws 1929, §§ 3, 4; Act No. 228, Pub. Acts
    1943).

2. SAME—LEGISLATIVE NECESSITY—REAPPORTIONMENT STATUTES.
    The term "legislative necessity" as used in connection with the
    enactment of reapportionment statutes means that the legis-
    lature must exercise a fair and reasonable discretion and
    comply as far as practically possible with constitutional re-
    quirements (Const. 1908, art. 5, §§ 3, 4).

3. SAME—APPORTIONMENT OF REPRESENTATIVES—DISCRETION OF
LEGISLATURE.
    The Constitution placed in the legislature a certain measure of
    discretion by delegating to it the power to apportion repre-
    sentative districts to contain an equal number of inhabitants
    "as near as may be" as well as in the direction that the
    districts be constituted from "convenient and contiguous terri-
    tory" (Const. 1908, art. 5, § 3).

4. SAME—REPRESENTATIVE DISTRICTS—FORMATION.
    The fact that a county may be entitled to a representative by
    reason of its having a moiety of the legislative ratio of pop-
    ulation does not preclude attachment of territory thereto in
    order to form a representative district even though such at-
    tached counties might have been attached to other counties
    contiguous by navigable water only (Const. 1908, art. 5, § 3).

5. SAME — REPRESENTATIVE    DISTRICTS — FORMATION — NORTHERN PENINSULA.

Apportionment of representative districts in northern peninsula of State was not unfair nor an unjust exercise of legislative discretion because in some instances a county having a moiety of the legislative ratio is attached to another county having less than a moiety of the ratio in the formation of a representative district (Const. 1908, art. 5, § 3; Act No. 228, Pub. Acts 1943).

6. SAME—REPRESENTATIVE DISTRICT—LANDLOCKED.

A landlocked county having less than a moiety of the legislative ratio was properly joined to the least populous adjoining county in order to form a representative district under the rule of legislative necessity where each of the counties surrounding such landlocked county contained more than a moiety of the ratio (Const. 1908, art. 5, § 3; Act No. 228, Pub. Acts 1943).

7. CONSTITUTIONAL    LAW—AGGRIEVED    PARTIES—REAPPORTIONMENT ACT.

Constitutionality of reapportionment statute may not be attacked by interveners because populous county, although it was entitled to 27 representatives thereunder, still had a disproportionate representation where interveners were not adversely affected and populous county is not complaining (Const. 1908, art. 5, § 3; Act No. 228, Pub. Acts 1943).

8. STATES—REAPPORTIONMENT—RESIDENCE OF REPRESENTATIVE.

Claim of intervening county with more than a moiety to which was joined a county with less than a moiety to form a·representative district that reapportionment act should have contained a provision that the representative from such district should always be a resident of intervening county *held,* without merit since such a provision would always deprive the population of the smaller county of a resident representative (Act No. 228, Pub. Acts 1943).

9. SAME — REAPPORTIONMENT — REPRESENTATIVE    DISTRICTS — SENATORIAL DISTRICTS.

Fact that provision of Constitution that senatorial districts should be rearranged once in each 10 years was not complied with at time of reapportionment of representatives would not render reapportionment invalid (Const. 1908, art. 5, §§ 3, 4; Act No. 228, Pub. Acts 1943).

10. Statutes—Presumptions.

A statute is presumed to be constitutional, rather than unconstitutional.

11. Costs—Public Question—Constitutionality of Reapportionment Statute.

No costs are awarded in proceeding to determine constitutionality of statute reapportioning representative districts, a public question being involved (Const. 1908, art. 5, §§ 3, 4; Act No. 228, Pub. Acts 1943).

Petition by William C. Stenson for a writ of mandamus to compel Herman H. Dignan, Secretary of State, to issue election notices under Act No. 152, Pub. Acts 1925, and to restrain defendant from issuing election notices under Act No. 228, Pub. Acts 1943. Submitted January 11, 1944. (Calendar No. 42,535.) County of Hillsdale intervenes as a party plaintiff. Writ denied February 24, 1944.

*Theodore Messner* and *N. C. Spencer,* for plaintiff.

*Haskell L. Nichols,* for intervening plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendant.

*William E. Dowling,* Prosecuting Attorney, and *Samuel Brezner* and *Helen W. Miller,* Assistant Prosecuting Attorneys, for County of Wayne, *amicus curiae.*

*Harry J. Merritt,* Corporation Counsel, for County of Oakland, *amicus curiae.*

*John L. Roach,* Prosecuting Attorney, and *Leon A. S. Seidel,* Assistant Prosecuting Attorney, for Genesee County, *amicus curiae.*

NORTH, C. J.   Plaintiff is a resident and an elector in the county of Ontonagon, and at present he is a representative in the State legislature from his district composed of the counties of Ontonagon, Baraga, and Keweenaw.   He has filed a petition in this Court wherein he asks that defendant Herman H. Dignan as secretary of State be restrained from issuing election notices under Act No. 228, Pub. Acts 1943 (Comp. Laws Supp. 1943, §§ 3, 4, Stat. Ann. 1943 Cum. Supp. §§ 2.23, 2.24), by which the legislative districts of the State were reapportioned; and also that mandamus be granted to compel the secretary of State to issue election notices in accord with Act No. 152, Pub. Acts 1925 (1 Comp. Laws 1929, §§ 3, 4, Stat. Ann. §§ 2.21, 2.22), under which reapportionment of legislative districts was controlled prior to the 1943 act.   The grounds upon which plaintiff asserts that the 1943 act is unconstitutional and void are as follows:

"(a) That the reapportionment is inequitable and unfair, and not a just exercise of legislative discretion;

"(b) That many counties having a moiety of the legislative ratio are attached to other counties having less population than a moiety of said ratio."

Defendant has filed an answer to the order to show cause which was issued upon the filing of the petition.   Therein defendant denies that the 1943 act is either an inequitable or unfair exercise of legislative discretion and denies that it contravenes the pertinent provisions of the Constitution (1908), art. 5, §§ 3 and 4; and further defendant avers that in each instance where a county having a population less than a moiety is joined in a representative district to another county having a moiety, such reapportionment is valid because in each instance the county having less than a moiety is completely sur-

rounded by counties having more than a moiety, and that under such circumstances the law of legislative necessity requires combining a county containing less than a moiety of the representative ratio with a county having a moiety, if the people in the less populous county are to be represented at all.

The pertinent constitutional provisions are found in the Constitution (1908), art. 5, §§ 3 and 4. The latter of these two sections provides in substance that each tenth year after 1913 the legislature shall by law apportion anew the representatives among the counties and districts of the State according to the number of inhabitants, using as a basis for such apportionment the last preceding United States census of this State. The portion of article 5, § 3, in the light of which the instant case must be decided reads as follows:

"The house of representatives shall consist of not less than sixty-four nor more than one hundred members. Representatives shall be chosen for two years *and by single districts,* which shall contain *as nearly as may be* an equal number of inhabitants and shall consist of convenient and contiguous territory. \* \* \* Each county, with such territory as may be attached thereto, shall be entitled to a separate representative when it has attained a population equal to a moiety of the ratio of representation."

It is of first importance that consideration should be given to the former holdings of this Court in *Houghton Board of Supervisors* v. *Blacker, Secretary of State,* 92 Mich. 638 (16 L. R. A. 432), and *Stevens* v. *Secretary of State,* 181 Mich. 199, because both the plaintiff and the intervening plaintiffs, Hillsdale county and city of Hillsdale, largely rely upon statements made by the Court in these cases.

The *Blacker Case* has given rise to some difference of opinion between counsel for the respective parties as to the construction that should be placed upon or the meaning of the words "convenient and contiguous" as used in the constitutional provision which provides that representative districts "shall contain as nearly as may be an equal number of inhabitants and shall consist of *convenient and contiguous territory.*" At the time of decision in the *Blacker Case* Isle Royal, an island located several miles off the northern shore of the mainland of this State, was designated as a county, the county of Isle Royal. Notwithstanding the large stretch of intervening navigable water between this island county and the mainland, it was held in the *Blacker Case* that within the meaning of the quoted constitutional provision the county of Isle Royal was "contiguous" to other counties on the mainland. It is in reliance upon such holding plaintiff insists that various counties in the northern peninsula of Michigan, each of which contains less than a moiety of population and which are not contiguous to each other by land, could be and should be grouped together in creating a representative district in which no one of the counties would contain a population equal to a moiety. Plaintiff's present representative district is composed of three counties which are contiguous only through navigable water, not by land. For the purpose of decision in the present case it may be conceded that the expression "convenient and contiguous," especially in cases of reasonable necessity, may be construed as in the *Blacker Case.* But it does not follow that in passing a reapportionment act the legislature is bound to adopt such rather strained rule of construction, especially if districts can be created of counties having land con-

tact. In the 1943 reapportionment act there is ac-
tual land contact between counties of the northern
peninsula grouped in the respective representative
districts composed of more than one county. Here-
inafter consideration will be given to the contention
that such redistricting violates constitutional re-
strictions. We note in passing that this Court in its
decision in the *Blacker Case* as to what constitutes
"convenient and contiguous territory," at least to
some extent, resorted to the rule of "legislative
necessity;" and that the primary question in the
*Blacker Case* was whether in reapportioning rep-
resentative districts the legislature had the power
to divide Houghton county so that part of that
county would be in one representative district and
part in another. It was held that such a division of
a county was violative of the Constitution. That
question is not at all involved in the instant case.

More serious difficulty is presented by the follow-
ing statement of Justice MOORE in the *Stevens Case*
wherein a reapportionment act was held invalid.
Justice MOORE said:

"We think it clear that the county is the unit of
representation; that, if not alone entitled to a rep-
resentative, it must be joined to an entire county or
counties to send one representative; and conversely
that, if the county alone is entitled to a represen-
tative, it cannot be combined with other counties to
form a district. Such combination of a county hav-
ing a moiety of the representative ratio with other
counties containing less than a moiety is contrary
to the theory of the county as a unit of representa-
tion, and is unjust to both counties combined."

At the outset it should be noted that only three
other Justices concurred in the quoted portion of
Justice MOORE's opinion. Justice BROOKE took no
part in the *Stevens Case*. The other three mem-

bers of the Court, apparently unwilling to subscribe to the above-quoted portion of Justice MOORE's opinion, reached the same result as Justice MOORE but placed decision solely on the authority of *Williams v. Secretary of State,* 145 Mich. 447, wherein a reapportionment of senatorial districts was held invalid because of disparity in the population of the districts which quite conclusively revealed gross inequalities in representation.

And it should be further noted, and we deem this of great importance, that immediately following the above-quoted words Justice MOORE added:

"The only exception is where a county having less than a moiety is entirely surrounded by counties, each of which has more than a moiety, in which case the law of legislative necessity makes it necessary, if the people of the lesser county are to be represented at all, to combine it with a county having a moiety."

Obviously the words "legislative necessity" mean nothing more or less than the exercise of fair and reasonable discretion on the part of the legislature in passing reapportionment statutes which comply as far as practically possible with constitutional requirements. The exercise of such a right is contemplated by the constitutional provision itself wherein it is noted that the respective representative districts shall "contain as *nearly as may be* an equal number of inhabitants and shall consist of *convenient and contiguous* territory." Clearly the framers of the Constitution understood that in determining whether the respective districts contain an equal number of inhabitants "as nearly as may be" under all the circumstances attending the reapportionment placed in the legislature a certain measure of discretion. Likewise what might constitute "convenient" territory is a matter incident to which

the legislature was left to exercise some discretion. And further it should be recalled that at the time the 1908 Constitution was drafted and adopted, this Court in the *Blacker Case* had already indicated that the legislature had a wide degree of discretion in determining (at least under the law of legislative necessity) what constituted so-called "contiguous" territory. Even a casual consideration of the constitutional provisions relative to reapportionment of legislative districts immediately discloses the necessity of allowing a reasonable measure of discretion on the part of the legislature in not adhering literally to each of the separate constitutional provisions restricting the manner of reapportionment. Otherwise the legislature would find itself in a strait jacket and reapportionment of representation suited to changing conditions would be wholly impossible. In part this comes about from the constitutional limitation of 100 as a maximum number of State representatives which must be apportioned among 83 counties, in which the population is unevenly distributed with large portions of population congested in comparatively small municipal areas, and with counties having more than a ratio of population being interlocated between counties having less than a moiety of population. Because of these difficulties we are not in accord with that portion of Justice Moore's statement above quoted which reads "and conversely that, if the county alone is entitled to a representative (by reason of having a moiety of population), it cannot be combined with other counties to form a district." The Constitution does not so expressly provide but instead it reads: "Each county, *with such territory as may be attached thereto,* shall be entitled to a separate representative when it has attained a population equal to a moiety of the ratio of representa-

tion." Surely some meaning must be given to the above italicized words. Justice MOORE obviously foresaw the impracticability, if not the impossibility, of literal compliance in reapportionment acts with the above-quoted limitation which he embodied in his opinion, because immediately thereafter he makes it plain that under "the law of legislative necessity" there may be departure from his restricted interpretation of the constitutional provision. The statement of Justice MOORE may well be accepted as a rule of construction to be applied when it is reasonably possible to do so; but it cannot be accepted as literally binding upon the legislature under all circumstances attending the enactment of reapportionment statutes.

Incident to plaintiff's contention that the 1943 reapportionment "is inequitable and unfair, and not a just exercise of legislative discretion," his presentation is almost wholly confined to the reapportionment of representative districts in the northern peninsula. He suggests a different allocation of counties; and by adopting the theory of the *Blacker Case* as to counties being contiguous through navigable waters of the Great Lakes, plaintiff suggests a reapportionment of northern peninsula counties which would avoid representative districts being composed of a county having more than a moiety of population with a county or counties having less than a moiety. As noted above, we decline to follow as an inflexible rule the statement of Justice MOORE, as did three of the Justices who sat with him in the *Stevens Case,* to the effect that "if the county alone is entitled to a representative, it cannot be combined with other counties to form a district." This leaves only for consideration, so far as plaintiff is concerned, the question of whether or not in the 1943 reapportionment of legislative districts in the north-

ern peninsula the legislature exercised a fair and honest discretion in creating districts which contain "as nearly as may be an equal number of inhabitants."

We have already noted that under the 1943 reapportionment each northern peninsula representative district consisting of a plurality of counties is constituted of counties which are in fact contiguous by reason of adjacent territory. In noting this, we do not mean to say that if reasonable necessity exists therefor resort might not be had to the theory of counties being contiguous through navigable waters as held in the *Blacker Case*. And on the other hand we do not hold, as plaintiff contends, that notwithstanding there is a reasonable "legislative necessity" therefor arising from the constitutional provision as to "convenient and contiguous territory," a legislative district may not be constituted by joining a county having more than a moiety of population with a county or counties having less than a moiety; and the joining of such counties is permissible even though it might be avoided by resort to the rule of the *Blacker Case* as to what constitutes "contiguous territory."

With parenthetical figures indicating the population of the representative districts and counties, the 1943 reapportionment of the northern peninsula is disclosed by the following:

Alger district (36,552) is composed of Mackinac (9,438), Luce (7,423), Schoolcraft (9,524), and Alger (10,167) counties.

Gogebic district (43,156) is composed of Gogebic (31,797) and Ontonagon (11,359) counties.

Houghton district (51,635) is composed of Houghton (47,631) and Keweenaw (4,004) counties.

Iron district (29,599) is composed of Iron (20,243) and Baraga (9,356) counties.

Menominee district (53,614) is composed of Menominee (24,883) and Dickinson (28,731) counties.

Each of the following northern peninsula counties composes a legislative district having one representative: Chippewa (27,807), Delta (34,037), and Marquette (47,144).

Bearing in mind that under the 1940 Federal census, which is the basis of the 1943 reapportionment, the total population of Michigan was 5,256,106, and that on the basis of 100 representatives provided in the 1943 act the ratio of population is 52,561 and that a moiety of a ratio is 26,280, it readily appears that each of the northern peninsula representative districts has been given a rather large proportion of representation as compared with other counties of the State. This is especially true as to such counties as St. Clair which has only one representative for a population of 76,222 and as to Wayne county with 2,015,623 population to which was allotted 27 representatives, being an average of 74,653 for each Wayne county representative.

It may also be noted that the 1943 reapportionment results in a fairly equal, at least "as nearly as may be," population in each of the eight northern peninsula representative districts. Exact equality in population between representative districts or even a close approximation thereto has never been accomplished nor is it possible to accomplish it under the Constitution and physical conditions existing in this State. In *Houghton Board of Supervisors v. Blacker, Secretary of State, supra,* p. 647, it is said:

"It is, of course, well known that an equal and exact division of the members among the different counties cannot be made, and all that the Constitution contemplates is that the division shall be as equal as may be. * * * The words 'as nearly as may be' are capable of sufficient expansion to

meet all difficulties that lie in the way.   *   *   *   It is also claimed that the Constitution, in relation to apportionment of representatives, cannot always be carried out in detail without violating some of its provisions.   This is no doubt true.   *   *   *   It has resulted always in the necessary denial to some county or counties of their full representation under the moiety system.   This Court could not be called upon to enforce a constitutional provision incapable of enforcement.   In case of making as equitable a division as possible under the Constitution,—and that is all that can be required,—it must be in the discretion of the legislature to deprive some of the counties of their representation   *   *   *   upon the moiety plan.''

The figures given just above disclose that only one of the 8 northern peninsula districts has a population in excess of the 52,561 ratio.   The average of representation under the 1943 reapportionment in the northern peninsula taken as a whole is 40,443 as against the State at large having a ratio of 52,561.   In view of the foregoing plaintiff's contention cannot be sustained to the effect that the 1943 reapportionment is inequitable or unfair or an unjust exercise of legislative discretion, or that it is constitutionally defective because in some instances a county having a moiety of the legislative ratio is attached to another county having less than a moiety of the ratio of population in the formation of a representative district.

Hillsdale county and the city of Hillsdale as intervening plaintiffs have filed a brief in which they also assail the constitutionality of Act No. 228, Pub. Acts 1943.   Prior to the 1943 reapportionment Hillsdale county constituted a district with one representative.   The 1940 Federal census gives Hillsdale county a population of 29,092.   The 1943 reapportionment act joined Branch county, having a popu-

lation of 25,845, with the adjacent county of Hillsdale in one legislative district. In so doing Branch county was combined with the least populous adjoining county. It is asserted in the Hillsdale brief that since Hillsdale county's population exceeds a moiety of a ratio it is entitled to be constituted a representative district without having other territory attached to it, and that denial thereof in the 1943 reapportionment act is violative of the constitutional provision that: "Each county, with such territory as may be attached thereto, shall be entitled to a separate representative when it has attained a population equal to a moiety of the ratio of representation." We have hereinbefore held adversely to this contention. Further, the record discloses that Branch county on the south borders on the State of Indiana, and on the west, north and east it is contiguous to counties each of which has more than a moiety of the ratio of population. Therefore even under the holding in the *Stevens Case* (181 Mich. 199), Branch county, which has a population less than a moiety of the ratio, may properly, as a matter of "legislative necessity," be joined with another contiguous county, having more than a moiety, to form a representative district.

It is also urged in the Hillsdale brief that the 1943 reapportionment act is unconstitutional because of the disparity of representation provided for Wayne county, which as noted above, is given only one representative to each 74,653 of its population, whereas other districts are given a larger ratio of representation and some of them a much larger ratio. This, it is asserted in the Hillsdale brief, violates the constitutional mandate that apportionment of representatives shall be equal "as nearly as may be." Wayne county's number of representatives was increased by the 1943 reapportionment act from 21 to

27; and instead of complaining, Wayne county, as well as certain other counties, has filed an *amicus curiae* brief in support of the validity of the 1943 reapportionment act. As pertinent to intervening plaintiffs' contention relative to the disproportionate representation in Wayne county, and expressing a directly opposite view, the principal plaintiff's brief contains the following, which we approve:

"In cases of counties entitled to more than one representative, some discretion is necessarily given to the legislature as to how the additional representatives shall be apportioned, limited, of course, to equality of population 'as nearly as may be.' This may very properly come within the term 'legislative necessity.'"

In view of all the difficulties attendant upon reapportionment of representative districts, intervening plaintiffs may not successfully attack the constitutionality of the 1943 reapportionment act on the ground just above noted, especially since intervening plaintiffs are not adversely affected thereby.

There is no merit to the contention in the Hillsdale brief that to prevent Hillsdale county being deprived of a representative from that county, the 1943 reapportionment act should have contained a provision that the representative from that district (now composed of Hillsdale and Branch counties) should always be a resident of Hillsdale county. Such a provision would at all times deprive the 25,845 population of Branch county of a resident representative; and the propriety of such a provision, to say nothing of its constitutionality, may well be questioned.

We are not in accord with intervening plaintiffs' further contention that since the Constitution (1908, art. 5, § 4) provides for "rearrangement" of senatorial districts, as well as reapportionment of repre-

sentative districts once in each 10 years, the 1943 reapportionment act as to representative districts should. be held invalid as an "abuse of legislative discretion," because the 1943 legislature did not also rearrange senatorial districts.

No reason has been advanced which would justify holding Act No. 228, Pub. Acts 1943, invalid. It is presumed to be constitutional, rather than unconstitutional. The petition filed herein is dismissed and the relief sought by plaintiff and intervening plaintiffs is denied. A public question being involved, no costs are awarded.

STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.